## ARKANSAS VALLEY LAND AND CATTLE COMPANY *v.* MANN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 147. Argued January 4, 7, 1889. — Decided March 5, 1889.

If the trial court makes the decision of a motion for a new trial depend upon a remission of the larger part of the verdict, this is not a re-examination by the court of facts tried by the jury in a mode not known at the common law; and is no violation of the Seventh Article of Amendment to the Constitution.

An order overruling a motion for a new trial after the plaintiff, by leave of court, has remitted a part of the verdict, is not subject to review by this court upon a writ of error sued out by the party against whom the verdict is rendered.

A recital in an instrument between two parties that one party, the owner of a great number of cattle, had, on the day of its execution, " sold " the cattle to the other party, followed by clauses guaranteeing the title, and providing the mode in which the buyer was to make payment, contains all the elements of an actual sale, as distinguished from an executory contract.

A provision in a bill of sale of cattle, that the seller shall retain possession

until, and as security for, the payment of the price, is not inconsistent with an actual sale, by which title passes to the buyer.

In trover for the conversion of cattle the plaintiff, proving his case, is entitled to recover for the value of such calves, the increase of the cows, as were in existence at the time of the demand and conversion.

In trover for the conversion of cattle intended for consumption, the plaintiff, if he recover, is entitled to interest on the value of the cattle at the legal rate of the place of the conversion.

TROVER. Verdict for the plaintiff and judgment on the verdict. Defendant moved for a new trial. The court decided that the motion should be denied if the plaintiff would remit a part of the verdict specified by the court, which was done. The defendant then sued out this writ of error. The case is stated in the opinion.

*Mr. Hugh Butler* and *Mr. Assistant Attorney General Maury* for plaintiff in error.

*Mr. R. T. McNeal* (with whom was *Mr. E. T. Wells* on the brief) for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an action for the recovery of damages for the alleged unlawful conversion by the defendant, the Arkansas Valley Land and Cattle Company (Limited), to its own use, of certain cattle. The complaint, which is framed in conformity with the local law, contains three distinct causes of action.

The first count claims seventy-one thousand dollars in damages for the unlawful conversion, at the county of Weld, Colorado, of fourteen hundred and fifty-two head of Oregon cattle, all branded on the right side or loin with what is commonly known as the bar brand, and of which seven hundred and forty-two were steers, alleged to be of the value of forty-four thousand five hundred and twenty dollars, and seven hundred cows, alleged to be of the value of twenty-one thousand dollars.

The second count claims eighty thousand dollars in damages for the conversion by the defendant of one thousand and thirty-six Oregon steers, alleged to be of the value of sixty-two thousand dollars, and marked, among other brands, with the letter

" T " on the left side, which cattle R. T. Kelly, A. J. Gillespie, T. E. Gillespie, Louis J. Gillespie, J. F. Gillespie, and G. O. Keck once owned, but their claim for damages, on account of said conversion, had been assigned, transferred and set over to the plaintiff.

The third count claims seventy-one thousand dollars in damages for the conversion of seven hundred head of Oregon cows and twelve bulls, of the alleged value of twenty-one thousand dollars, and fifteen hundred head of young cattle, the increase of the cows last mentioned, and of the actual value of fifty thousand dollars.

Judgment is asked upon all the counts for the sum of two hundred and twenty-one thousand dollars.

There was evidence relating to a herd of about two thousand steers and cows of various ages, all branded, which the plaintiff claimed to have bought from Slagle and Jordan in October, 1880. His contention is that at the time of the purchase that herd was at or near Rock Creek Station on the Union Pacific Railroad, in the Territory of Wyoming; that under an arrangement, part of his contract of purchase, he caused to be shipped, out of this herd, to Omaha or Council Bluffs for sale at prices fixed by that contract, about six hundred head; that the remainder, about fourteen hundred in number, were driven, in the same month, to Sheep Creek Basin, about twenty miles distant from Rock Creek; that in December they fled or drifted before a severe-wind and snow-storm from the west and northwest, until they came to the head of Sheep Creek Basin, thence passed over the Black Hills Range, and moved in an easterly and southerly direction until they reached the ranch of one Bloomfield, in Colorado, and were by him taken possession of, without right, and sold to the defendant, a corporation of which he was general manager.

There was evidence as to another herd of about 1200 steers, marked with a T brand on the left side, and belonging to Gillespie & Co., which disappeared about the same time from the same region in Wyoming Territory. This herd, it was claimed, also found its way to Bloomfield's ranch, and were by him sold without right to the defendant.

Early in the year 1884, the complainant made demand upon the defendant, through Bloomfield, as its manager, for the above cattle, including those formerly owned by Gillespie & Co., to whose rights the plaintiff had succeeded. The demand was refused upon the ground that the defendant had not received any cattle belonging to the plaintiff.

The answer put in issue the plaintiff's ownership of the cattle described in the complaint, and relied also upon certain facts in bar of any recovery against the defendant. The plaintiff filed a replication controverting all the new matters set out in the answer.

After a protracted trial, the jury returned a verdict in favor of the plaintiff for the sum of $39,958.33. There was a motion by the defendant for a new trial, as well as one in arrest of judgment.

The court decided that if the plaintiff would remit the sum of twenty-two thousand eight hundred and thirty-three dollars and thirty-three cents from the amount of the verdict, the motion for a new trial should be denied; but if he declined to do so, a new trial should be granted. In accordance with this decision, the plaintiff remitted the above sum, and stipulated in writing that judgment might be entered for the sum of $17,125. The motion for a new trial, and the motion in arrest of judgment, were overruled, and judgment was entered for the latter sum. To the action of the court in respect to this remission, and to the order denying the motions for new trial and in arrest of judgment, the defendant excepted.

1. The point was much pressed at the bar that the remission by the plaintiff of a part of the verdict, followed by a judgment for the sum remaining, deprived the defendant of his constitutional right to have the question of damages tried by a jury, without interference upon the part of the court, except as it became necessary to instruct them in reference to the principles of law governing the determination of that question. The precise contention is, that to make the decision of the motion for a new trial depend upon a remission of part of the verdict, is in effect a re-examination by the court, in a mode not known at the common law, of facts tried by the jury, and

therefore was a violation of the Seventh Amendment of the
Constitution.

The counsel for the defendant admits that the views expressed by him are in conflict with the decision in *Northern
Pacific Railroad Company* v. *Herbert*, 116 U. S. 642, 646; but
he asks that the question be re-examined in the light of the
authorities. That was an action against a railroad company
for the recovery of damages resulting from the negligence of
its representative, whereby the plaintiff sustained serious personal injury. The verdict was for $25,000, and a new trial
was ordered, unless the plaintiff remitted $15,000 of the verdict. He did remit that sum, and judgment was entered for
$10,000. This court said: "The exaction, as a condition of refusing a new trial, that the plaintiff should remit a portion of
the amount awarded by the verdict was a matter within the
discretion of the court. It held that the amount found was
excessive, but that no error had been committed on the trial.
In requiring the remission of what was deemed excessive, it
did nothing more than require the relinquishment of so much
of the damages as, in its opinion, the jury had improperly
awarded. The corrected verdict could, therefore, be properly
allowed to stand," citing *Blunt* v. *Little*, 3 Mason, 102, 107;
*Hayden* v. *Florence Sewing Machine Co.*, 54 N. Y. 221, 225;
and *Doyle* v. *Dixon*, 97 Mass. 208, 213. In *Blunt* v. *Little*,
which was an action for malicious civil prosecution, in which
the verdict was for two thousand dollars, Mr. Justice Story,
while admitting that the exercise of the discretion of the court
to disturb the verdict of the jury was full of delicacy and difficulty, recognized it to be a duty to interfere, when it clearly
appeared that the jury had committed a gross error, or acted
from improper motives, or had given damages that were excessive in relation either to the person or the injury; and held
that the cause then before him should be submitted to another
jury unless the plaintiff remitted $500 of the damages. The
remission was made and the new trial refused. In *Doyle* v.
*Dixon*, which was an action for breach of contract, the language of the court was: "When the damages awarded by the
jury appear to the judge to be excessive, he may either grant a

new trial absolutely, or give the plaintiff the option to remit the excess, or a portion thereof, and order the verdict to stand for the residue." To the same effect are many other cases. *Guerry* v. *Kerton*, 2 Rich. (Law) 507, 512; *Young* v. *Englehard*, 1 How. (Miss.) 19; *Deblin* v. *Murphy*, 3 Sandf. (N. Y.) 20. See also numerous authorities collected in Sedgwick on Damages, 6th ed. 765, note 3; 1 Sutherland on Damages, 812, note 2; 3 Graham & Waterman on New Trials, 1162.

The practice which this court approved in *Northern Pacific Railroad* v. *Herbert* is sustained by sound reason, and does not, in any just sense, impair the constitutional right of trial by jury. It cannot be disputed that the court is within the limits of its authority when it sets aside the verdict of the jury and grants a new trial where the damages are palpably or outrageously excessive. *Ducker* v. *Wood*, 1 T. R. 277; *Hewlett* v. *Crutchley*, 5 Taunt. 277, 281; authorities cited in Sedgwick on Damages, 6th ed. 762, note 2. But, in considering whether a new trial should be granted upon that ground, the court necessarily determines, in its own mind, whether a verdict for a given amount would be liable to the objection that it was excessive. The authority of the court to determine whether the damages are excessive implies authority to determine when they are not of that character. To indicate, before passing upon the motion for a new trial, its opinion that the damages are excessive, and to require a plaintiff to submit to a new trial, unless, by remitting a part of the verdict, he removes that objection, certainly does not deprive the defendant of any right, or give *him* any cause for complaint. Notwithstanding such remission, it is still open to him to show, in the court which tried the case, that the plaintiff was not entitled to a verdict in any sum, and to insist, either in that court or in the appellate court, that such errors of law were committed as entitled him to have a new trial of the whole case.

But it is contended that the plaintiff could not have been required to remit so large a sum as $22,833.33, except upon the theory that the jury, in finding their verdict, were either governed by passion, or had deliberately disregarded the facts that made for the defendant; in either of which cases, the

duty of the court was to set aside the verdict as one not fit to be the basis of a judgment. Undoubtedly, if such had been the view which the court entertained of the motives or conduct of the jury, it would have been in accordance with safe practice to set aside the verdict and submit the case to another jury. That was the course pursued in *Stafford* v. *Pawtucket Haircloth Co.*, 2 Cliff. 82. In that case, Mr. Justice Clifford, after observing that the damages were greatly excessive and without support in evidence, said: "Such errors may in many cases and under most circumstances be obviated by remitting the amount of the excess; but where the circumstances clearly indicate that the jury were influenced by prejudice or by a reckless disregard of the instructions of the court, that remedy cannot be allowed. Where such motives or influences appear to have operated, the verdict must be rejected, because the effect is to cast suspicion upon the conduct of the jury and their entire finding."

This court is not, however, authorized to assume, from the mere fact that $22,833.33 was remitted, that the court below believed that the jury were governed by prejudice, or wilfully disregarded the evidence. On the contrary, it may be inferred that the amount for which the plaintiff was entitled to a verdict was ascertained by the court, after a calculation based upon the prices of cattle as given by numerous witnesses; or that the court became satisfied that the preponderance of evidence as to the ownership of some of the cattle was against the plaintiff; or, as to other cattle, that they were not traced to the possession of the defendant. But, independently of this view, and however it was ascertained by the court that the verdict was too large by the above sum, the granting or refusing a new trial in a Circuit Court of the United States is not subject to review by this court. *Parsons* v. *Bedford*, 3 Pet. 433, 447; *Insurance Co.* v. *Folsom*, 18 Wall. 237, 248; *Railroad Co.* v. *Fraloff*, 100 U. S. 24, 31. Equally beyond our authority to review, upon a writ of error sued out by a party against whom a verdict is rendered, is an order overruling a motion for a new trial, after the plaintiff, with leave of the court, has remitted a part of the verdict. Whether the ver-

dict should be entirely set aside upon the ground that it was excessive, or was the result of prejudice, or of a reckless disregard of the evidence or of the instructions of the court, or whether the verdict should stand after being reduced to such amount as would relieve it of the imputation of being excessive, are questions addressed to the discretion of the court, and cannot be reviewed at the instance of the party in whose favor the reduction was made. Under what circumstances, if any, a party who is compelled to remit a part of the verdict, in order to prevent a new trial, can complain before this court, we need not decide in the present case.

If the Circuit Court had entered judgment for the whole amount of the verdict below, the defendant could have made no question in this court as to its being excessive. We could only, in that case, have considered matters of law arising upon the face of the record. And we can do no more when the defendant brings to us a record, showing that the court below has, in the exercise of its discretion, compelled the opposite side, as a condition of its overruling a motion for a new trial, to remit a part of the verdict.

2. In support of the plaintiff's claim to have purchased the Slagle-Jordan herd of ca le, and his right to bring suit for their conversion, the following agreement was proven and read in evidence:

"Sheep Creek, Wyo. Ter., *Oct.* 11, 1880.

"Memorandum of agreement made and entered into this date by and between C. Slagle and John Jordan of Hepner, Umatilla County, Oregon, and J. J. Mann of Albany County, Wyo. Ter.

"Party of the first part has this day sold the following neat cattle to the said party of the second part in consideration of one dollar, the receipt of which is hereby acknowledged, two thousand head (2000) more or less, classed as follows, to wit— [here follows classification of steers, cows and heifers, according to ages and price per head, and also description of the brands on the different lots constituting the herd]—title guaranteed.

"Party of the second part agrees to pay for them as follows, to wit: To ship the three and four year old feeders to Council Bluffs or to Omaha, and in the name of Jordan and Slagle, to the number of six hundred (600) head. If there is not that number of threes and fours, then to ship twos to make up the number six hundred (600), and to guarantee the cattle to net them $26.00, $24 for all, respectively, up to the full number of threes and fours, and the excess to be reckoned at $18 per head if the threes and fours should not reach six hundred (600). Also to pay $2000 before cattle are shipped cash, and the loss on the steers so shipped so soon if any as the steers are sold and money paid to them, Slagle and Jordan, within two days after reaching market. If the steers should net more than the above prices, then the net profit to be credited to party of second part. The balance of said payment to be in ten (10) months from the fifteenth of October (Oct. 15th), A.D. 1880, with interest at the rate of twelve per cent per annum, seller to retain possession of the balance of the herd until the last payment is made.

"(Signed)          "C. Slagle.

"John Jordan.   [seal.]

"J. J. Mann.   [seal.]

"Witness: Chas. G. Mantz."

The instructions asked by the defendant proceeded upon the ground that this agreement was executory only, and that the right of property remained in the seller, Mann acquiring only the right to buy according to the terms of the agreement. The charge of the court was based upon the theory that the title passed by the agreement to Mann; the seller retaining possession of that part of the herd not shipped to Omaha or Council Bluffs, simply as security for the amount the buyer agreed to pay. We concur in the view taken by the Circuit Court. Any other interpretation would, in effect, declare that title could, in no case, pass to a buyer while possession remains with the seller for any purpose whatever. Slagle and Jordan certainly intended to vest Mann with the title, at the date of the bill of sale in question; for that instrument recites that

the owners had, on the day of its execution, "sold" the cattle to him, and that recital is followed by clauses guaranteeing the title, and providing the mode in which the buyer was to make payment. Here are all the elements of an actual sale, as distinguished from an executory agreement. The retention of possession by the sellers until, and as security for, the payment of the price, was not inconsistent with an actual sale by which title passed to the buyer. The agreement in question is unlike that in *Harkness* v. *Russell*, 118 U. S. 663, which expressly declared that neither the title, ownership, nor possession should pass from the seller until the note given by the buyer for the stipulated price was paid.

3. The plaintiff asked the following instruction: "If you find that defendant converted any of the cattle belonging to plaintiff, and that among those converted were cows which either had calves with them at the time of the conversion or afterwards and before the commencement of this suit had calves, then you are instructed that the plaintiff is entitled to recover the value of such calves or increase, and you may consider as evidence of the number of such increase the average increase of cattle for the years between the time you may find the company took possession and the institution of this suit." The court below observed: "That is true, substituting for 'the institution of this suit' the time when the demand was made for the cattle. The plaintiff, if entitled to anything, is entitled to the value of the animals with their increase up to the time of the demand made, not the commencement of the suit, but the making of the demand." The defendant insists that this instruction was erroneous. But, in our judgment, it is correct. The calves of such of the cows as belonged to the plaintiff, and were converted by the defendant, certainly belonged to the former; for, according to the maxim *partus sequitur ventrem*, the brood of all tame and domestic animals belongs to the owner of the dam or mother. 2 Bl. Com. 390. The defendant's liability as for conversion extended, at least, to such of the calves, the increase of plaintiff's cows, as were in existence at the time of demand and conversion. As it was not informed of the plaintiff's claim of

ownership until his demand in January, 1884, the conversion must be taken to have occurred when it refused to comply with such demand. The plaintiff, if entitled to recover, was entitled to damages proportioned to the value of the cows and their calves at the time of conversion. The damages could not properly exceed the value of the property at that date, and less than that would not be sufficient compensation.

4. Error is assigned by the defendant in relation to that part of the charge stating that the plaintiff, if entitled to recover, was entitled to interest from the time of demand, at the rate of ten per cent. That is the rate of interest allowed by the statutes of Colorado on the forbearance or loan of money, where there is no agreement between the parties. Gen. Stat. Colorado, 1883, § 1706, p. 559. In *Machette* v. *Wanless*, 2 Colorado, 180, which was an action of replevin, in which damages were claimed for the detention of personal property, the court said, that " where the property is domestic animals, valuable for service only, the value of the use of the animal is, of course, the measure of compensation; but where, as in this case, the article is intended for consumption, interest upon the value of it would seem to be the true compensation. If the owner of the grain should ask to obtain the like quantity, he must purchase in the market, at current rates, and he would be deprived of the use of the money thus invested. The best estimate of a loss that can be made is interest upon the amount of money which he would for that purpose be compelled to pay out." See, also, *Hanauer* v. *Bartels*, 2 Colorado, 514, 525. The same rule ought to control the ascertainment of damages in actions for simple conversion of domestic animals intended for sale and consumption. The plaintiff receives adequate compensation when he is allowed damages equal to the value of the property at the time of conversion, with interest, at the established legal rate, from that date. He is entitled, as matter of law, to be compensated by the wrong-doer to that extent.

Many other questions have been discussed by counsel, but we do not deem it important to refer to them. No substantial error of law appears to have been committed to the prejudice of the defendant, and

*The judgment is affirmed.*