## SMITH v. PITTSBURGH & W. RY. CO.

(Circuit Court, N. D. Ohio, E. D. November 5, 1898.)

### No. 5,115.

1. DAMAGES—PERSONAL INJURY TO CHILD—IMPAIRMENT OF PROSPECTS OF MARRIAGE.

Where a personal injury to a little girl is such as to seriously impair her prospects of marriage when she reaches a marriageable age, such fact may properly be considered by the jury as an element of damages resulting from the injury.

2. SAME—PLEADING—SPECIAL DAMAGES.

While the loss of a particular prospect of marriage by a woman must be specially pleaded to entitle it to be considered as an element of damages, the loss of a general prospect of marriage, in the case of a child, by reason of an injury which disfigures her, is a natural, and not a special, consequence of the injury, and may be, and in fact can only be, taken into consideration as an element of general damages, and a special allegation with regard to it is not required.

3. SETTING ASIDE VERDICT — EXCESSIVE DAMAGES — PROVINCE OF COURT AND JURY.

A verdict should not be set aside simply because it is excessive in the mind of the court, but only when the excess is shocking to a sound judgment and a sense of fairness to the defendant. Where there is any margin for a reasonable difference of opinion in the matter, the view of the court should yield to the verdict of the jury, rather than the contrary.

4. RAILROADS—INJURY TO PERSON ON TRACK—TRESPASSERS — PRESUMPTION AS TO RIGHTS IN STREET.

Where a railroad occupies a street with its tracks, the ordinary presumption is that of a joint use by the public and the railroad company; and although the municipal authorities may, under the statute, have power to grant the exclusive right to the use of the street to the railroad company, in the absence of proof of such grant, or of the exclusive use of the street by the company for such a length of time as to give it the right by prescription, a person injured upon the track in the street cannot be regarded as a trespasser.

5. SAME—PERMITTING PUBLIC TO USE TRACK—MEASURE OF CARE REQUIRED.

Even where the track of a railroad is on its private property, if it permits the public, including children, to habitually cross its track at a given point without objection, it is bound, in the operation of its trains, to exercise care with due regard to such probable use, and to the probable danger to persons so using the crossing.

6. SAME—CONTRIBUTORY NEGLIGENCE OF CHILD.

While it is the duty of children to exercise ordinary care to avoid injury, ordinary care for them is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under similar circumstances.

7. SAME—NEGLIGENT HANDLING OF CARS—INJURY TO CHILDREN.

To permit a loaded railroad car to run down a grade alone on a track laid in a street, without the exercise of any care or attention to see that no children are in danger therefrom, constitutes negligence which renders

the railroad company liable for the injury of a child too young to take care of itself, which was on the track without the fault or negligence of its parents.

## On Motion for New Trial.

E. B. Leonard, for plaintiff.

Jones & Anderson, for defendant.

HAMMOND, J. With reluctance, I have concluded to overrule the motion for a new trial. That reluctance grows out of the size of the verdict, and not at all out of any suggested errors of the court in the instructions to the jury, which were as favorable to the defendant as could be reasonably expected, under the proof in the case.

If the plaintiff had been of mature years when the injury occurred, the court might suggest a remittitur, if she chose to accept it, as was done in Wood v. Railroad Co., 88 Fed. 44, and very much for the same reason. But there the brakeman, although without negligence in his own conduct, was consciously engaged in a hazardous employment, and voluntarily occupied a dangerous place. He knew that railroad operatives were often negligent in doing their work, however prudent he might himself be. The child did not. She did not recognize that loaded cars might be turned loose in public streets to crash across the pathway she was following. Therefore, might not the jury be somewhat justified by that circumstance? Or, at least, may not the court be excused, in the absence of any delicate scales for measuring such damages by the jury, in allowing the larger amount to stand in the one case and not the other?

However this may be, there are other reasons which overcome the reluctance to sustain so large a verdict, and mainly because of the fact that the plaintiff here is a girl. It was the almost fatal injury to her prospects of marriage, the chief reliance of woman for advancement in the monetary value of their lives, that influenced the jury, no doubt. The reasoning of the brakeman's case does not apply, therefore, in its premises of fact, to that of a girl similarly injured.

In Grotenkemper v. Harris, 25 Ohio St. 510, 514, the supreme court of Ohio, approving the doctrine of Railroad Co. v. Barron, 5 Wall. 90, and applying it to the case of the death of a child by the wrongful act of the defendant, in a suit by its next of kin, under the statute of Ohio, uses this language:

"The deceased at the time of his death was a mere infant, and it could not properly be said that his life was of any present pecuniary value to any one; and the only basis upon which damages for pecuniary injury to his next of kin, by reason of his death, could be predicated and allowed, was the one given by the court. If death had not ensued from the injury complained of, there can be no doubt that the party injured, although an infant, could, by his next friend, have maintained an action against the wrongdoers, and have recovered damages commensurate with the injury sustained."

Turning to the action of the trial court, we find that what was thus approved in that case was an "allowance of damages other than such as would immediately and directly follow from the wrongful act of the defendant," and might include, though more difficult of appli-

cation in case of a mere child, such pecuniary benefits as the next of kin "would probably have derived from him in the future." And the jury had been told, in substance, that they must take all the facts and circumstances into consideration, and assess such damages as the next of kin had suffered in view of the future prospects, as they appeared from the then existing circumstances and the ordinary development of such a child. There is not a statute governing this case, but the rules of the common law for measuring the damages were substantially the same where there was no death and the injured party is suing in his own behalf, and the supreme court of Ohio recognizes this in the case cited. And, on this rule, I am unable to see why a girl five years old may not ask the jury to consider what effect the injury of disfigurement will probably have on the prospects of her marriage when she reaches the age of womanhood, and how far the money value of her whole life may be blasted by that circumstance. It is not speculative because it is difficult to estimate, nor in any other sense than almost every element of damages is speculative where the ascertainment depends on what the jury, or other trior of the fact, "shall deem fair and just," and where, being "uncertain and indefinite," the damages are not capable of adjustment "with precision and accuracy," as was stated in the Ohio case. The estimate must be entire, once for all, and hence we cannot wait to see how the unknown adversities or contingencies of the future may affect the question; as if, by some other calamity, those prospects, which we presently estimate, should turn out to have had no existence at all; as if the girl should die before she reaches womanhood; or, having reached it, should find a profitable marriage notwithstanding the disfigurement.

In the case of Ernestine Koch, injured on shipboard, a servant girl, who, among other injuries, received a wound in the forehead, from which a permanent scar resulted that "somewhat disfigured" her, Judge Deady allowed, as one item, $500 for the scar, concerning which he uses this language:

"It may be that the sum of $500 is an insufficient compensation for such a blemish upon the personal appearance of the libelant. But it does not appear that the scar will affect her personal appearance, so as to make her presence offensive or painful to others," etc.

And then he says this:

"Still the scar will be a permanent disfigurement of her person, for which she is entitled to some compensation. Karr v. Parks, 44 Cal. 49. In this country, at least, it is still open to every woman, however poor or humble, to obtain a secure and independent position in the community by marriage. In that matter, which is said to be the chief end of her existence, personal appearance—comeliness—is a consideration of comparative importance in the case of every daughter of Eve." The Oriflamme, 3 Sawy. 397, Fed. Cas. No. 10,572; 3 Suth. Dam. 268; 1 Suth. Dam. 765.

There are other familiar instances where loss of marriage prospects are elements of damage, as in seduction, breach of promise (for the particular loss by that breach of contract), slander or libel (under some circumstances), and sometimes of false representations amounting to a distinct and actionable injury. Cooley, Torts, 277; 3 Suth. Dam.

90 F.—50

323. An injury to the person of a woman affecting her prospects of marriage should be as actionable as one to her character.

The petition in this case does not specially plead any loss of marriage prospects, but in a case like this it is difficult to see why there should be any special plea. It is said by Mr. Sutherland that special damages are required to be stated in the declaration, and that an unmarried woman cannot secure damages on account of her prospects of marriage being lessened by the personal injury for which she sues, unless such special damage be alleged; for which he cites Hunter v. Stewart, 47 Me. 419; 1 Suth. Dam. 763, 765; 3 Suth. Dam. 268, and note. Not having an opportunity of examining that case to see the age of the woman, its bearing is not fully understood. But presumably it was a woman, and not a child of five years of age, as to which it could hardly be said that she could truthfully set up any special plea or averment as to a loss of marriage; and, therefore, presumably the case, and all like it, would fall within the general rule of pleading that damages not following directly as a consequence of the particular circumstances must be specially pleaded. The loss of a particular prospect of marriage must be specially pleaded, no doubt, but why should the loss of the general prospect belonging to a child whose injury so disfigures her as to make marriage almost impossible? It would seem rather to fall within the rule of the Ohio case above cited, as applicable to a girl's prospects in the future, although a mere infant now; and, generally, within the doctrine that such a loss is a natural consequence of the injury, and not a special consequence, very much like the loss to growing crops, which may be compensated in damages. Suth. Dam. 158, 187, 193–198.

It would be agreed by all that the injury to this plaintiff does seriously impair her prospects of marriage when she reaches the marriageable age, and I had no hesitation in holding that such impairment is an element of damage for the consideration of the jury. It is not more likely to unduly influence a jury, nor is it more difficult of estimation, than any other element of damages confessedly within their consideration when a mere child is injured, nor at all unlike most of the elements of calculation or estimation in all cases of personal injury. It all depends on the fair judgment of the jury, and is especially subject to the scrutiny of the court and its power to control excessive verdicts, as was said by Cresswell, J., in Smith v. Woodfine, 1 C. B. (N. S.) 660, in a somewhat analogous estimation of damages without the aid of a precise rule. 3 Suth. Dam. 323, and note; Id. 289; 1 Suth. Dam. 810.

Mr. Justice Story, in the leading federal case on the duty and power of the court to control the verdict by compelling a remittitur of excessive damages, under the penalty of a new trial, describes the perplexity of every judge called upon to exercise the power in language that will guide and comfort him quite as well as any enunciation on the subject. He says:

"As to the question of successive damages, I agree that the court may grant a new trial for excessive damages. So far as the contrary doctrine may be supposed to be maintained by Duberley v. Gunning, 4 Term R. 651, it has been qualified or overturned in Chambers v. Caulfield, 6 East, 244, and Hewlett

v. Cruchley, 5 Taunt. 277. It is indeed an exercise of discretion full of delicacy and difficulty. But if it should clearly appear that the jury have committed a gross error, or have acted upon improper motives, or have given damages excessive in relation to the person or the injury, it is as much the duty of the court to interfere, to prevent the wrong, as in any other case. In the present case there were many aggravating circumstances, and certainly the defendant had no cause of action. It appeared to me at the trial to be a strong case for damages. At the same time, I should have been better satisfied if the damages had been more moderate. I have the greatest hesitation in interfering with the verdict, and in doing so I believe that I go to the very limits of the law," etc. Blunt v. Little, 3 Mason, 102, Fed. Cas. No. 1,578.

This has often been approved by other courts, and by the supreme court of the United States. Railroad Co. v. Herbert, 116 U. S. 642, 647, 6 Sup. Ct. 590; Cattle Co. v. Mann, 130 U. S. 69, 9 Sup. Ct. 458, where Mr. Justice Harlan carefully refutes the contention that the exercise of the power is unconstitutional, and points out the distinction between remitting in a case where excess is the only infirmity of the verdict, and granting a new trial where the excess indicates that the jury have been guilty of the misconduct of partiality, or indifference to the evidence, or to the case of the defendant, so that their verdict is tainted with the suspicion that they may have altogether ill-considered it, or negligently and imperfectly discharged their duty, not only as to the amount of damages, but in other respects. And Mr. Justice Gray, in Kennon v. Gilmer, 131 U. S. 22, 9 Sup. Ct. 696, declares another limitation on the power when it is held that the court cannot arbitrarily fix a sum and enter a verdict for it, but must leave a free choice to the plaintiff of remitting or taking a new trial. So, the excess of a verdict may sometimes be remitted in the appellate court. Railroad Co. v. Harmon's Adm'r, 147 U. S. 571, 13 Sup. Ct. 557.

Guided by these cases, I have concluded to let the verdict stand, notwithstanding my own dissatisfaction with its amount. Otherwise it is all it should be. There can scarcely be a more flagrant act of negligence than that of running a loaded car, without proper control, down a steep grade, in the street of a town, and apparently without the least concern for any injury it may do to persons in the street, or who may be in the street, for all the operatives know. The movement should have been safeguarded in some way; at least by some preliminary observation of the track before the car is turned loose, made then and there, to see that no one is in the way. This little girl happened to be passing, or lingering, it may be, with childlike play, in the place of danger; and the operatives, unconsciously, no doubt, but none the less negligently, without any outlooking whatever, abandoned the car, of which they had lost control, and it drove another car over the child, crushing her leg so that she has lost it. Now I do not for one moment, in sustaining this verdict, harbor the idea of punishing the company for this negligence of its servants, reprehensible as it was, but the statement is made to show how utterly the verdict is bare of any other possible infirmity than that of whatever excess there may be in it. The jury was told that it was not a case for punitive damages, and cautioned against resent-

ment at the carelessness; also the question of the child's own discretion and negligence was submitted to the jury, it being admitted of record that the mother was not negligent in allowing it to be on the street; and the question of the negligence of the train hands was submitted to the jury.

The defense most relied on was that the child was a trespasser, of which something will be said hereafter; which being ruled against the defendant company, the jury had no other issues than those above indicated, and decided them all properly, except that they gave a larger compensation than the court would have given if trying that fact. To illustrate my action here, I may properly suggest that, in my view of the facts concerning the child and her injury, about $7,000 would have been a reasonable compensation. But can the court say that the allowance of $10,000 was error of judgment "in relation to the person or injury" on the part of the jury? In a certain sense, I feel that this question might be answered in the affirmative; and yet, in the sense that the court must respect the verdict of the jury, in fact as well as in pretense or theory, and must not interfere to substitute its own judgment for that of the jurors,— thereby violating a constitutional privilege to have the fair verdict of a jury, and not the fair estimate of the court,—I say, in that sense, I am constrained to answer the question in the negative. A crippled woman is in a worse condition than a crippled man. To say nothing of the immense loss to her in the matter of personal attractiveness in respect of her chances of marriage, always her main reliance for a support in life, the infirmity lessens her feebler powers of meeting the demands upon physical exertion below the degree of impairment resulting to a man. The effect on her spirits and courage is more depressing, she feels the loss more than a man, and shrinks from the exhibition of her infirmity that is necessary to overcome its hindrances. Then there are the ordinary elements of physical and mental suffering, now and forever during her life, so far as mental suffering goes, to be reckoned by the jury. No doubt they felt that the child should be liberally compensated, and I am unwilling to disturb their verdict, simply because I believe it is their honest verdict, not so far wrong in amount as to demonstrate miscalculation or idle estimate, and certainly not passion or prejudice. I should not feel, as Mr. Justice Story did, that I was safely within the limits of the law, if I imposed the penalty of a new trial on the plaintiff by asking a remittitur.

I have extended this opinion in order to explain, as best I may, the considerations that have controlled that discretion imposed by law upon the court in dealing with a verdict that does seem excessive, and yet which I cannot conscientiously, and commendably to my own intelligence, disturb. A verdict should not be set aside simply because it is excessive, in the mind of the court, but only when the excess is shocking to a sound judgment and a sense of fairness to the defendant. Where there is any margin for a reasonable difference of opinion in the matter, the view of the court should yield to the verdict of the jury, rather than the contrary.

The next most important ground for a new trial is the contention,

made vigorously at the trial as now, that the plaintiff was a tres-
passer.     There is, in my judgment, not the slightest foundation for
this position.    It depends wholly upon a bare assumption of an ex-
clusive right to the street on which the tracks were laid.    There is
not a particle of proof of it.    If that exclusive right exists, it could
be readily proved.    What does it matter that the city has power, un-
der the statutes of Ohio, to grant an exclusive right to a railroad
company to use the street, if the grant has not been made?    If it has
been made, there should be an ordinance, a contract, or some other
muniment of the fact; or, if there be some other sufficient grant,
no matter what or how, we should have been furnished with the
proof of it.    We are asked to treat the child as estray upon the
company's private grounds, where there was no obligation to look
out for her, unless her presence and danger were known at the time,
upon not a whisper of proof from any witness, nor. the production
of any document.    Why?    Upon a suggestion in argument that, in
the absence of all proof, the presumption is that of a grant of an
exclusive right to the use of the street.    The court charged the jury
that the ordinary presumption is that of a joint use by the public
and the company until there should be proof of some kind to the con-
trary,—either of a grant of some larger use, or, possibly, proof of a
long-continued exclusive use, by prescription, as it were, or otherwise.
I adhere to this.    If such exclusive use existed as a fact, or if there
were a subsisting right to it, it would not have been left to any pre-
sumptions, even where possibly they might operate, but the best
proof, the grant itself, would be forthcoming, or else proof aliunde
of the facts necessary to establish it.    The circumstances here do
not indicate any necessity for presumptions or a reliance upon them,
and the contention seems altogether gratuitous.

But, more than this, if the right of use were exclusive, there was
proof in this case that the public had been allowed to pass over
and along the street, or private right of way, if you please, con-
stantly, and without the least restraint, as if it were still a street
and a joint use existed.    In the case of Harriman v. Railroad Co., 45
Ohio St. 11, 12 N. E. 451, it was held that:

"Even where the structures of the railroad company were on its private
property, and it for a long time permits the public, including children, to
travel and pass habitually over its road at a given point without objection
or hindrance, it should, in the operation of its trains and management of the
road, so long as it acquiesces in such use, be held to anticipate a continuance
thereof; and it is bound to exercise care accordingly, having due regard
to such probable use, and proportioned to the probable danger to persons
using its road."

The verdict of the jury is conclusive on the question of the child's
own want of contributory negligence, and it is well supported by
the facts as applicable to a child so young as five years.    The de-
fendant disclaimed on the record any blame of the parents.    Railroad
Co. v. Stout, 17 Wall. 657, 660.    There remained, then, only the
question whether the child was of discreet judgment, and able to
take care of itself, under the circumstances, and whether it was
chargeable with negligence under the circumstances, including that
of its tender years.    These were issues properly submitted to the

jury, in my judgment, and the cases supporting the instructions given on the subject were cited in the charge itself, and largely quoted to the jury. Railroad Co. v. Stout, 17 Wall. 657; Railroad Co. v. McDonald, 152 U. S. 262, 278, 14 Sup. Ct. 619; Rolling-Mill Co. v. Corrigan, 46 Ohio St. 283, 291, 20 N. E. 466; Harriman v. Railroad Co., 45 Ohio St. 11, 12 N. E. 451.

The supreme court of Ohio and that of the United States are in accord on the subject of the negligence of children, whatever conflict there may be elsewhere; and the sound rule was quoted from that of Ohio, as follows:

"In the application of the doctrine of contributory negligence to children, * * * their conduct should not be judged by the same rule which governs that of adults; and, while it is their duty to exercise ordinary care to avoid injuries of which they complain, ordinary care for them is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under similar circumstances." Rolling-Mill Co. v. Corrigan, supra.

The plaintiff was at that time five years old. Her mother had admonished her from straying away from home and going across the railroad track, and had punished her for it. On this occasion she had gone out alone, but unknown to the mother, and inferentially, possibly, she stopped to play at a sand pile close to the track, though the proof of her movements is very meager. The whole matter was left to the jury, and they find she was not negligent, according to her age, and not appreciative of her danger because of her age.

There was not in the proof a suggestion that the operatives knew of her presence, or had any ground of suspecting it, further than the fact that the people thereabouts, including children, constantly used the pathway across the street and the railroad tracks in going to and fro. The court charged the jury that they did not, under the circumstances, owe any particular duty to this particular child on this particular occasion, but that they owed a general duty to all the children of the public that might be found using, straying upon, loitering, or' playing in the streets; but that it was only such care as should be taken by ordinarily prudent and careful men, under like circumstances, for the purpose of their reasonable protection; and the test of ordinary care, as proven by that which ordinary usage in the business demands, was given from Titus v. Railroad Co., 136 Pa. St. 618, 626, 20 Atl. 517. This instruction was applied to the facts, and the jury were told that when loaded cars were left to run on the street alone, before the movement began or became dangerous, some attention should be had to seeing that children were not in the way or in danger. There was absolutely no attention in this case, but the maneuver of sending the car down the grade was undertaken in the apparent reliance that every one in the way or in danger would get out and prudently take care of themselves. This ordinarily may be a safe reliance as to adults and older children, but not as to those too young to take care of themselves; and while such very young children, perhaps, are not often astray, sometimes they are, and if the parents are not negligent, and they are not of discreet mind themselves, the risk of injury is wholly with the railroad operatives who

are using the streets to handle their cars. Possibly railroad operatives never think of this liability to stray children, too young to keep out of the way, but nevertheless it exists; and the ever-present defense or reliance upon contributory negligence must fail them, if the jury find that the child is too young to be accountable for any negligence there may be about its being in dangerous places. This liability is not confined, as counsel suggest, to cases where the company does not guard sufficiently places of danger, like a turntable, enticing to children as a plaything and playplace, but is of universal application, and applies, according to circumstances, of course, to the protection of children from the culpable negligence of others. It must be so, or children who cannot take care of themselves, because they are unconscious of danger, would be the victims of negligence, without right or hope of redress. Their lives would be unprotected, wholly, if this were not so. I am satisfied with the charge of the court on that subject as altogether sound. Not being a trespasser, the plaintiff was entitled to that protection which is above indicated. Motion overruled