974

CROCKER et al. v. HELVERING, Com'r of Internal Revenue.

HELVERING, Com'r of Internal Revenue, v. CROCKER et al.

Nos. 6220, 6221.

United States Court of Appeals for the District of Columbia.

Argued Nov. 8, 1934.

Decided Feb. 25, 1935.

S. Milton Simpson, of Washington, D. C., and George E. Cleary, of New York City, for taxpayers.

Frank J. Wideman, Sewall Key, Milford S. Zimmerman, and Robert H. Jackson, all of Washington, D. C., for Commissioner of Internal Revenue.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and HITZ, Associate Justices.

MARTIN, Chief Justice.

These cross-appeals relate to alleged deficiencies in the federal estate tax due from the estate of Louis Joel Duveen, deceased, an alien nonresident who died on March 4, 1920.

It appears that on April 10, 1918, an agreement was executed by and between Henry J. Duveen of the city of New York, Joseph Duveen of the same place, Louis Joel Duveen of the city of London, and Benjamin Duveen of the city of New York, whereby it was agreed that a corporation should be formed under the laws of the state of New York, to be known as Duveen Bros. Inc., to engage in the business of buying and selling antiques in London, Paris, and New York, and that its corporate existence should continue until March 31, 1932. The capital stock of the corporation was to consist of 22,000 shares of preferred and 10,000 shares of common stock. These shares, excepting a negligible qualifying number, were owned by the four incorporators, and it was agreed that none of the parties should sell, hypothecate, or dispose of any interest in his stock without the consent of all of the other stockholders; and that for the purpose of securing this obligation, each of the parties should, upon receiving his certificates of stock, forthwith deposit the same into the custody of the Guaranty Trust Company of the city

of New York, by it to be held under this agreement until the final liquidation of the corporation.

On January 15, 1919, Henry J. Duveen, one of the incorporators, departed this life testate, and letters testamentary were issued to his executors by the Surrogates' Court of New York County. At the time of his death he was the owner of 8,976 shares of preferred stock and 3,500 shares of common stock of the corporation, all of which shares were on deposit with the Guaranty Trust Company of New York, as stipulated by the agreement of April 10, 1918, aforesaid. On February 19, 1919, the executors of his estate, as parties of the first part, and Joseph Duveen and Louis Joel Duveen, as parties of the second part, entered into a written contract, wherein the latter is named as Louis J. Duveen, relating to a sale of the foregoing shares owned by decedent to the parties of the second part. The contract contained, among others, the following provisions to wit:

"First: The executors hereby sell, transfer, and assign unto Joseph Duveen and Louis J. Duveen, and the said Joseph Duveen and Louis J. Duveen hereby purchase from the executors the said eight thousand nine hundred seventy-six (8,976) shares of the preferred stock and the said three thousand five hundred (3,500) shares of the common stock of the corporation at the price and upon the terms hereinafter set forth.

"Second: (a) The purchase price of the said eight thousand nine hundred seventy-six (8,976) shares of preferred stock is one hundred dollars ($100) a share, plus accrued interest at the rate of five percent (5%) per annum from the date of the last dividend payment on said preferred stock, to the date hereof.

"(b) The purchase price of the said three thousand five hundred (3,500) shares of common stock is its book value as the same appears on the books of the corporation at the date hereof, less thirty-five percent (35%) of the inventoried or stocked value of all its merchandise and stock in trade, on hand, or on approval with customers. * * *

"Third: (d) The third part of the said total purchase price shall be divided into ten (10) successive half-yearly installments, as nearly equal as may be practicable, the first of which shall be paid on January 1, 1920, and which shall mature semiannually each successive six (6) calendar months thereafter, so that one of said installments shall mature on January 1 and one on July 1 in each year, beginning with January 1, 1920. * * *

"(e) All payments to be made hereunder to the executors shall be made at the Guaranty Trust Company of New York, 140 Broadway, New York City.

"Fourth: The parties of the second part shall be jointly and severally liable to the executors for the total purchase price of said shares of stock, as hereinabove provided, but the said parties of the second part, as between themselves, shall be liable each only for the shares respectively purchased by him.

"Fifth: (a) As security for the payment of the said ten (10) half-yearly installments to be paid by the parties of the second part, as aforesaid, the parties of the second part hereby deposit with the executors all of the shares of stock hereby purchased.

"(b) Upon payment of each installment, the executors shall do all things necessary or proper for vesting against each such payment a proportionate amount of said preferred stock and said common stock in such names and such divisions as may be directed by the parties of the second part; and upon payment of all of the said installments with interest, as hereinabove provided, the executors shall vest any and all of said stock then not transferred in the parties of the second part, as they may direct.

"(e) Until default in the obligation of the parties of the second part in the payment of any of the said installments or of the interest thereon, the parties of the second part or their assigns, as individually entitled to receive same, shall be entitled to vote the said shares of stock for the time retained hereunder as security by the executors, and the executors shall furnish any and all necessary documents to that end.

"Seventh: Inasmuch as the certificates for the said shares of stock hereby sold are now on deposit with Guaranty Trust Company of New York, under said agreement of April 10, 1918, such depositary is hereby notified that the parties of the second part have become the owners of the said shares, and of all the right, title, share, and interest of the executors and of the said Henry J. Duveen, deceased, in and to the same, and a copy of this agreement shall be filed with the said depositary."

The foregoing agreement was performed by the parties, and on May 29, 1919,

a supplemental agreement was executed by Joseph Duveen and Louis Joel Duveen wherein it was provided that the stock purchased by them under the foregoing contract should be divided between them as follows: 2,565 shares of preferred stock and 1,000 shares of common stock to Louis Joel Duveen, and the balance to Joseph Duveen.

On March 4, 1920, Louis Joel Duveen departed this life. At the time of his death and for many years prior thereto he was a resident of England and a citizen and subject of Great Britain. He died possessed of all the rights secured to him in 2,565 shares of preferred stock and 1,000 shares of common stock in the corporation, purchased from the executors of Henry J. Duveen under the contracts of February 19, 1919, and May 29, 1919, as above set out. These shares also were in the custody of the Guaranty Trust Company and were to be paid for in ten successive half-yearly installments. At the time of decedent's death he had paid, pursuant to stipulation, the sum of $130,463.30, with interest, upon the purchase price of the shares. The unpaid balance of the purchase price computed as provided in the contract was $552,534.54. At that time the value of each share of common stock of the corporation was $566 and the value of each share of preferred stock was $100.

The executors of Louis Joel Duveen, deceased, in their return of decedent's gross estate for federal estate tax returned the amount of $130,463.30 as the value of the interest of decedent in the shares of stock covered by the two contracts above referred to, this being the amount which decedent had paid upon the agreed price prior to his decease. The executors claimed that this was the extent of decedent's taxable interest in the stock at the time of his death.

The Commissioner, however, determined a deficiency in the return and included in the gross estate the entire value of the 2,565 shares of preferred stock and 1,000 shares of common stock purchased by decedent under the contract dated February 19, 1919. The Commissioner also held that under section 403 (b) (1) of the Revenue Act of 1918 (40 Stat. 1098) deductions should be limited to an amount not in excess of 10 per centum of the value of that part of decedent's gross estate which at the time of his death was situated in the United States.

The executors appealed from the Commissioner's determination to the Board of Tax Appeals, and the Board held that under a proper interpretation of the contract of sale dated February 19, 1919, the decedent at the time of his death had acquired the ownership of such stock only as had been paid for by him in his lifetime, and that only the value of that portion of the stock actually paid for by him prior to his death amounting with interest to $157,110.39 should be included in his gross estate; and that there should also be included therein the stipulated value of the decedent's contract right to purchase the remainder of the stock contracted for, but not paid for, at the time of decedent's death, which value was stated by the Board to be $112,853.31.

The Board also held that under section 403 (b) (1) of the Revenue Act of 1918, supra, the amount allowed as deductions from decedent's gross estate should not exceed 10 per centum of that part of the estate situate in the United States at the time of decedent's death.

The executors, in case No. 6220, appealed to this court from the decisions of the Board of Tax Appeals and present the following contentions: (1) That the Commissioner was barred from assessing or collecting any additional tax, interest, or penalty in this case because of the running of the statute of limitations; (2) that none of the shares of stock above referred to had a business situs in the United States, and that it was error for the Commissioner to include the value thereof as a part of decedent's gross estate. The executors also contend that the provisions of section 403 (b) (3) of the Revenue Act of 1918, supra, which provide that, "For the purpose of this title stock in a domestic corporation owned and held by a nonresident decedent * * * shall be deemed property within the United States," is unconstitutional because it violates the Fifth Amendment to the Constitution of the United States; (3) that even if section 403 (b) (3) be constitutional, and if it be proper to include in the gross estate the shares of stock which the decedent owned in the corporation, nevertheless the sum of $112,853.31, representing the value of the decedent's right to purchase the remainder of the stock contracted for but not paid for at the time of his death, was intangible personal property which had its situs at decedent's domicile in England, and therefore was not property in the United States or subject to assessment here; (4) that the provisions of section 403 (b) (1) of the Revenue Act

of 1918 that the deduction in such case shall not exceed 10 per centum of the value of that part of decedent's gross estate which at the time of his death was situate in the United States is unconstitutional for the reason that it is arbitrary, capricious, and confiscatory, and contrary to the provisions of the Fifth Amendment to the Constitution of the United States.

The Commissioner, in case No. 6221, appealed from the decision of the Board of Tax Appeals and contended that its ruling was erroneous in including in the gross estate of the decedent only the value of the corporate shares which had been paid for by decedent before his death. The Commissioner contended that the value of all of the shares purchased by decedent including such as were not yet paid for at the time of his decease should be returned as part of his gross estate.

■■ We think that the assessment of the deficiency was not barred by the statute of limitations. The decedent died on March 4, 1920. Under the Revenue Act of 1918 and section 3182, Rev. Stat. (26 USCA § 102), it was required that the assessment of estate taxes in this case should be made within fifteen months after the due date, March 4, 1921. Before the expiration of this period the Revenue Act of 1921 (42 Stat. 315, § 1322) was enacted, which provided that the tax might be assessed within four years after it became due. Under these provisions, since the estate tax became due on March 4, 1921, the time for making assessments for additional estate tax would expire on March 4, 1925. On June 24, 1924, when this period of limitations had not yet expired, the Revenue Act of 1924 was enacted. Section 1009 (b) of that act (26 USCA § 106 note) provided that in case of "a failure to file a required return" the tax might be assessed or a proceeding in court for the collection of such tax might be begun without assessment at any time.

The will of the decedent was not admitted to probate until June 17, 1924, at which time the executors qualified. The estate tax return was not filed until June 29, 1925, and the deficiency notice was mailed on August 10, 1927. It therefore appears that such return was not filed until after the enactment of the Revenue Act of 1924, by the terms of which the Commissioner was entitled to make the assessment at any time in case of a failure to file a required return. We think that this provision covers any return which at the time of its enactment had not been filed when due under the requirements of the act. Its application was not restricted alone to the character of an omitted return, but applied as well in case of a total failure to file a return within the time required by law. The intent of the statute was to give to the Commissioner sufficient time after the filing of a return to investigate it in so far as was necessary to ascertain the facts in relation to it. Accordingly in our opinion the assessment made by the Commissioner in 1927 was not barred by the statute of limitations.

■ We do not, however, agree with the conclusion reached by the Board whereby it determined that only the stock which had been paid for by the decedent before his death had become his property and therefore subject to the estate tax. It seems manifest from the terms of the contract of February 19, 1919, that the parties intended that title to all of the stock named therein should pass to the purchasers immediately upon the execution of the contract. In the first section of the contract it is provided that "the executors hereby sell, transfer, and assign" and that "Louis J. Duveen and Joseph Duveen hereby purchase" all of the shares owned by the estate. In subdivision (a) of the fifth section of the contract it is provided that the purchasers deposit with the executors the stock purchased as security for the entire payment to be made by the purchasers for the stock. According to the fifth section of the contract dividends payable upon the stock in liquidation thereof should be paid over by the vendees to the vendors as a credit on the purchase price, and it is provided that all dividends in specie or in kind shall, unless and until default shall have been made, belong to and be delivered to the vendees. Subdivision (e) of the fifth section of the contract specifically provides that the purchasers shall be entitled to vote the shares of stock during the time they are retained as security by the executors for the purchase price. Section seventh provides that "inasmuch as the certificates from the said shares of stock hereby sold are now on deposit with Guaranty Trust Company of New York, * * * such depositary is hereby notified that the parties of the second part have become the owners of the said shares and of all the right, title, share, and interest of the executors and of the said Henry J. Duveen, deceased, in and to the same * * *."

978

·The provision upon which the Board relied ·for its conclusion is the fifth (b), whereby it is provided that "upon payment of each installment, the executors shall do all things necessary or proper for vesting against each such payment a proportionate amount of said preferred stock and said common stock in such names and such divisions as may be directed by the parties of the second part; and upon payment of all of the said installments with interest, as hereinbefore provided, the executors shall vest any and all of said stock then not transferred in the parties of the second part, as they may direct." We think, however, that when this paragraph is construed with due reference to the other provisions of the contract it is no more than a stipulation that as fast as the installments· of the purchase price are paid according to the contract proportionate amounts of stock shall be released as security and delivered to the purchaser.

The redelivery or deposit of the stock by the vendees, by the terms of the contract of sale, as security for the payments to be made by vendees is entirely consistent with the passage of title at the time of the execution of the contract. Arkansas Val. Land & Cattle Co. v. Mann, 130 U. S. 69, 78, 9 S. Ct. 458, 32 L. Ed. 854; Chicago Ry.-Equipment Co. v. Merchants' Bank, 136 U. S. 268, 10 S. Ct. 999, 34 L. Ed. 349.

In our opinion therefore the value of all the stock so transferred was subject to the estate tax provided by the statute. And in this view of the case the provision which includes in decedent's gross estate the sum of $112,853.31 as the value of the contract of the decedent for the purchase of the unpaid residue of the stock is eliminated.

■ A contention was made by the executors before the Board that the provisions of section 403 (b) (3) of the Revenue Act of 1918 were unconstitutional. This subject since has been settled by the decision of the Supreme Court in Burnet v. Brooks, 288 U. S. 378, 53 S. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747. It cannot be denied therefore that the stock owned by decedent at the time of his death and held in the custody ·of the Guaranty Trust Company in this country had its situs in the United States and was subject to federal estate tax.

■ It is contended by the executors that the provisions of section 403 (b) (1) of the Revenue Act of 1918, which limits the deductions in the case of a nonresident to an amount not in excess of 10 per cent. of the value of that part of his gross estate which at the time of his death is situated in the United States, are unconstitutional. We cannot sustain this contention. This precise question was before the Circuit Court of Appeals for the Second Circuit in City Bank Farmers' Trust Co. v. Bowers, 68 F.(2d) 909, certiorari denied, 292 U. S. 644, 54 S. Ct. 778, 78 L. Ed. 1495. In that case the court held that this provision was not unconstitutional. The question is fully argued in that decision and we need do no more than express our agreement with its conclusions.

. We therefore affirm the decision of the Board of Tax Appeals subject nevertheless to the modification as above set out, to wit, that all of the capital stock purchased by decedent whether paid for or not at the time of his death was properly returnable as part of his gross estate in this country, and therefore liable for federal estate tax under the Revenue Act of 1918. · A mandate to this effect shall be forwarded to the Board of Tax Appeals for a redetermination of the tax, consistently herewith.

Mr. Justice GRONER took no part in the consideration or decision of the case.

Affirmed as modified.