## BIERBACH v. GOODYEAR RUBBER CO.

*(Circuit Court, E. D. Wisconsin. January 17, 1883.)*

1. NEGLIGENCE—PERSONAL INJURIES—COLLISION ON HIGHWAY.

   Where teams have a right in the ordinary course of business to follow each other, turn about, pass and repass, that degree of care and caution must be exercised by parties using such highways, when in proximity to each other, to avoid doing each other injury, as might be expected of a person of ordinary care and prudence; and it is not enough to exonerate one from a charge of negligence, that after a collision had become inevitable he did all that he could to avoid it, when it appears that if he had exercised the proper degree of care and prudence in keeping at a safe distance behind the plaintiff's vehicle the accident never would have happened.

2. SAME—CONTRIBUTORY NEGLIGENCE.

   The law does not impose upon the driver of a vehicle in a crowded city thoroughfare the duty of giving a signal to the vehicles behind him of his intention to turn; it is the duty of the driver in the rear of such vehicle to be on the lookout for such a deviation from the course by the driver in the advance. Although both parties are bound to use ordinary prudence and care, yet ordinary care on the part of a driver of a team following another team in the streets of a city may mean, in the circumstances in which the parties are placed, a higher degree of care then would be exacted from the driver of the team in advance.

3. SAME—EXCESSIVE DAMAGES—PRACTICE IN THE FEDERAL COURTS.

   The court will not, as a rule, disturb a verdict in an action for damages resulting from negligence, unless it is apparent that the verdict was the result of passion, or prejudice, or partiality on the part of the jury. It is the practice of the federal courts, where excessive damages are believed to have been awarded, to give to the recovering party an option to remit a part of the verdict, and, if a remission is made, then to refuse a new trial.

At Law.

*Austin & Runkel* and *Geo. B. Goodwin,* for plaintiff.

*E. P. Smith, N. Pereles & Sons,* and *Jas. G. Jenkins,* for defendant.

DYER, J. This action, to recover damages for personal injury occasioned by a collision between a vehicle owned by the plaintiff and in which he was riding, and a vehicle in charge of the defendant's servant, was tried at the last term of this court,* the trial resulting in a verdict for the plaintiff of $4,500. A motion to set aside the verdict was duly made, has since been argued, and is now to be decided. The motion is based on three grounds: *First,* that sufficient proof was not made of the alleged negligence of the defendant's driver; *second,* that the evidence showed contributory negligence on

*See 14 FED. REP. 826.

the part of the plaintiff; *third,* that the damages awarded by the jury are excessive.

After a careful review of the case I am satisfied that the motion ought not to prevail on either of the two grounds first stated. The collision occurred on one of the thoroughfares of this city. The horse and wagon of the defendant were following the plaintiff's horse and wagon. They were from 10 to 15 feet apart, and both going at a moderate rate of speed. The place between the plaintiff's wagon and the right margin of the street was sufficient to enable the defendant's vehicle to pass the plaintiff's. While in the respective positions stated, the plaintiff's driver undertook to turn his horse and wagon about—their movement being to the left—and while thus turning, the left fore wheel of the defendant's wagon struck the right hind wheel of the plaintiff's wagon and overturned it. The plaintiff was thrown violently to the ground, and, as I think the evidence shows, was seriously injured.

I concur without hesitation in the finding of the jury that the defendant's driver was guilty of negligence. It is true that after a collision was imminent he made energetic effort to avoid it. But it was then too late. And I am convinced he did not observe with needful attention the proximity of the two vehicles, and was not sufficiently watchful of the movements of the horse and wagon in advance of him before a collision was unavoidable. He seems to have been thoughtless of the comparatively slight space there was between the two vehicles. He kept directly in the rear of the plaintiff's wagon, and evidently without regard to the possibility of any change in its position or movement; and at last, as an unavoidable result, the two wagons came in violent contact. I think that with the seasonable exercise of prudence on his part the collision would not have occurred. The plaintiff had a right to turn his horse and wagon around at that place. It is matter of common observation that in the streets of a city like this, where teams are constantly coming and going from and to almost every locality, passing, repassing, following, and meeting each other, the demands of business often require them to suddenly stop, to turn about, or otherwise change their course, and this they have a right to do.

If the plaintiff was guilty of contributory negligence, that negligence consisted in the act of turning his horse and wagon about when the defendant's horse and wagon were in his rear, without giving some signal in advance that he was about to turn. And if that was contributory negligence, *per se,* then it was the duty of the court

to take the case from the jury on that ground.   But I do not think the law imposed upon the plaintiff, in the locality where he was, and in the circumstances of his situation, the duty of giving to the defendant's driver previous warning of his intention to turn about.   The latter had no right to act upon the presumption that the plaintiff would or might not deviate from the course upon which he was going up to the time when he turned his vehicle.   Both were bound to exercise ordinary prudence; but ordinary prudence on the part of a driver of a team, following another team in the streets of a city, may mean, in the circumstances in which the parties are placed, a higher decree of care than would be exacted from the driver of the team in advance.   While ordinary care is the universal rule, it is not to be understood that in such cases what would be ordinary care on the highways of the country, or in the streets of a village, would, of necessity, be a degree of care that would exonerate from liability in the thoroughfares of a city, where the needs and courses of wagon transportation are as manifold and varied as are the requirements of business.

If there was contributory negligence in this case, it arose from the mere act of turning about at that time and place; nothing more— nothing less.   I cannot give legal sanction to such a conclusion.   It behooves a person, situated as the defendant's driver was, to take into account the liability of a vehicle immediately in advance of him to suddenly change its course, rather than to thoughtlessly act upon the presumption that it will continue in a given course without deflection or change.   The whole question of negligence of the defendant's driver, and of contributory negligence on the part of the plaintiff's driver, was, I think, fairly submitted to the jury, and the court cannot say that it disagrees with the jury in the conclusions they reached upon that branch of the case.

The collision occurred in July, 1880.   It was proven on the trial that in January, 1876, the plaintiff accidentally received a dangerous wound in the neck just below the jaw from a pistol shot.   As shown by the evidence, the injury was one that, in consequence of the course of the ball, to some extent affected the vertebra, and its locality appears to have been, in part at least, the very seat of the injury claimed to have been sustained by the fall from the wagon.   It was claimed by the plaintiff that he was entirely cured of the pistol-shot wound, and that the disabilities from which he is now suffering are wholly attributable to the wagon accident.   On the part of the defendant it was contended that the present weaknesses and suffering of the plain-

tiff arise from the first and not the second injury.    Much testimony
was adduced in support of these conflicting theories.    The jury were
instructed that the plaintiff's recovery, if entitled to recover, must be·
limited to such damages as were purely compensatory, and that it was
not a case for exemplary damages; and this proposition was consider-
ably emphasized by the court.    They were also told that the extent
of the plaintiff's recovery should be limited strictly to compensation
for injuries and losses occasioned by the wagon accident, and that the
prior injury should not be made an element of recoverable damage,
except that if that injury and its effects were shown to have been
aggravated by his fall from the wagon, damages for the aggravation
thereof might be allowed.    The jury awarded $4,500.

After careful consideration of all the facts of the case I am con-
strained to think that this verdict in its amount is not warranted by
the evidence.    Many authorities have been cited to show that the
court will not disturb a verdict in such a case as this unless it is ap-
parent that the verdict is the result of passion or prejudice or par-
tiality on the part of the jury.    Admitting this to be the general rule,
I suppose, in a case where only compensatory damages are allowable,
if the court is satisfied that by mistake or from any cause the jury
have given what is equivalent to exemplary damages, the right of the
court to set the verdict aside would be hardly debatable.    Having
heard the testimony as the witnesses gave it, and having considered
it in all its bearings, although the court would by no means unjustly
disparage the plaintiff's claim, it is difficult to reconcile the verdict
with the belief that the jury were governed only by the principle of
compensation.    The case was one calculated to arouse the feelings
and sympathies of a jury.    Although one of the physicians testified
that, after prolonged treatment of the pistol-shot wound, he regarded
the plaintiff as pratically restored, it was apparent that he meant to
speak guardedly upon that point; and, after all the evidence was in,
it seemed to the court to be very well established that a considerable
part of the plaintiff's present disability is really attributable to the
pistol-shot injury.    It is, of course, quite impossible to draw the line
between the effects of the original injury and the effects of the second
injury, or to discover the extent to which the last injury may have
aggravated the first.    But on the whole, and with such light as the
entire evidence throws upon the question, I have a strong conviction
that this verdict exceeds what the plaintiff has shown himself entitled
to recover.

It is the practice in this court, where excessive damages are believed to have been awarded, to give to the recovering party an option to remit a part of the verdict, and, if a remission is made, then to refuse a new trial. It has been decided by the supreme court of this state that in a case where a verdict includes damages which a party is entitled to recover, with those which he should not recover, and they are not clearly severable, then the only correct course is to grant a new trial. It is said that for the court in such a case to fix the amount of damages to which the party is entitled, and to permit the balance of the verdict to be remitted, is to usurp the functions of the jury. It has long been the practice of the circuit judge of this circuit, in cases of personal injury, where he was of the opinion that the verdict was excessive, to indicate the amount to which the party was justly entitled, and to permit the plaintiff to remit the remainder of the verdict as a condition upon which a motion for a new trial would be refused. However, I will not undertake to state just what amount the court would award to the plaintiff as damages, if the question were submitted to it for its sole determination; but will say only this: that if the jury had returned a verdict for $3,000 the court would not deem it within its province to disturb it. And so, if the plaintiff chooses to remit $1,500 and to let judgment be entered for $3,000, the motion for a new trial will be refused; otherwise, it will be granted.

