### DELAWARE, L. & W. R. CO. v. YURKONIS.

(Circuit Court of Appeals, Second Circuit.   January 12, 1915.)

#### No. 123.

1. COMMERCE ⬤➝8—FEDERAL LIABILITY ACT—EXCLUSIVE POWER OF CONGRESS.
    When the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]) applies, it is the supreme law of the land, and supersedes all other remedies.
    [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ⬤➝8.]

2. COMMERCE ⬤➝16—LAW GOVERNING—"INTERSTATE COMMERCE"—MINING.
    The mere act of mining coal is not "interstate commerce," within the federal Employers' Liability Act.
    [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 2; Dec. Dig. ⬤➝16.]
    For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

3. COURTS ⬤➝23—JURISDICTION—EFFECT OF STIPULATION.
    Where an employer was not engaged in interstate commerce, a concession by the defendant, in an employé's action for injuries, that the parties were engaged in interstate commerce, as alleged, in the complaint, could not give the court jurisdiction on that ground.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 75, 75½, 81; Dec. Dig. ⬤➝23.
    Consent of parties to jurisdiction of federal courts, see note to Philadelphia & Reading Coal & I. Co. v. Keslusky, 127 C. C. A. 557.]

---

⬤➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. STIPULATIONS ⬦⟿13—SETTING ASIDE OR GRANTING RELIEF.**

In an employé's action for injuries, where, though the parties were not engaged in interstate commerce, plaintiff alleged and defendant conceded that they were so engaged, if such concession gave jurisdiction, plaintiff's motion to strike such allegations should have been granted, as even a stipulation entered into inadvertently will be relieved against, if the opposite party is not prejudiced.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 67–76; Dec. Dig. ⬦⟿13.]

**5. MASTER AND SERVANT ⬦⟿256—ACTIONS FOR INJURIES—COMPLAINT.**

It was proper, in an employé's action for injuries, and in harmony with the New York practice, to so prepare the complaint as to enable plaintiff to recover either under the federal or state Employers' Liability Act or under the common law as supplemented by the state mining law, as the evidence might permit.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 809–812, 815; Dec. Dig. ⬦⟿256.]

**6. MASTER AND SERVANT ⬦⟿285—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.**

In a coal miner's action for injuries, his testimony that, after lighting a squib to fire a blast, he was knocked down twice by explosions of gas, and that before he could get away the blast was exploded by the gas, was not so incredible, nor was the cause of the explosion so disconnected with the employer's failure to ventilate the mine, as required by Mining Law Pa. June 2, 1891 (P. L. 176), as to justify the direction of a verdict, and these questions were properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. ⬦⟿285.]

In Error to the District Court of the United States for the Eastern District of New York.

For opinion below, see 213 Fed. 537.

F. W. Thomson, of New York City, for plaintiff in error.

J. V. Bouvier, Jr., and W. Montague Geer, Jr., both of New York City, for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to review a judgment entered on the verdict of a jury in favor of the plaintiff for $50,000 for personal injuries sustained by him while in the employment of the defendant, which verdict under an order of Judge Chatfield the plaintiff consented to reduce to $36,000.

July 6, 1911, the plaintiff, who was a certified miner, employed for 18 years in the Pettibone anthracite coal mine, owned by the defendant, was terribly injured by the explosion of a blast which he had prepared. May 7, 1913, this action was brought in the Supreme Court of New York for Richmond county, and removed by the defendant to the United States District Court for the Eastern District of New York. The complaint proceeded upon the theory that the blast was prematurely exploded before the plaintiff could get away by an explosion of gas due to the defective ventilation of the place where he was working, in violation of the Pennsylvania Mining Law of June 2, 1891.

The amended complaint set forth sections 1, 4, 8, and 9 of article X

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and rules 1 and 9 of article XII, also section 8 of article XVII which are as follows:

"Article X.  *  *  *

"Section 1. The owner, operator or superintendent of every mine shall provide and maintain a constant and adequate supply of pure air for the same, as hereinbefore provided.  *  *  *

"Sec. 4. The ventilating currents shall be conducted and circulated to and along the face of each and every working place throughout the entire mine, in sufficient quantities to dilute, render harmless and sweep away smoke and noxious or dangerous gases, to such an extent that all working places and traveling roads shall be in a safe and fit state to work and travel therein. *  *  *

"Sec. 8. All cross-cuts connecting the main inlet and outlet air-passages of every district, when it becomes necessary to close them permanently, shall be substantially closed with brick or other suitable building material, laid in mortar or cement whenever practicable, but in no case shall said air-stoppings be constructed of planks except for temporary purposes.

"Sec. 9. All doors used in assisting or in any way affecting the ventilation shall be so hung and adjusted that they will close automatically."

"Article XII.

"Rule 1. The owner, operator or superintendent of a mine or colliery shall use every precaution to insure the safety of the workmen in all cases, whether provided for in this act or not.  *  *  *

"Rule 9. In every working approaching any place where there is likely to be an accumulation of explosive gases, or in any working in which danger is imminent from explosive gases, no light or fire or other than a locked safety lamp, shall be allowed or used."

"Article XVII.  *  *  *

"Sec. 8. That for any injury to person or property occasioned by any violation of this act or any failure to comply with its provisions by any owner, operator, superintendent, mine foreman or fire boss of any coal mine or colliery, a right of action shall accrue to the party injured against said owner or operator for any direct damages he may have sustained thereby."

Also the Pennsylvania Employers' Liability Act of June 10, 1907 (P. L. 523), which is as follows:

"Section 1. Be it enacted, etc., that in all actions brought to recover from an employer for injury suffered by his employé, the negligence of a fellow servant of the employé shall not be a defense, where the injury was caused or contributed to by any of the following causes, namely: Any defect in the works, plant, or machinery, of which the employer could have had knowledge by the exercise of ordinary care; the neglect of any person engaged as superintendent, manager, foreman or any other person in charge or control of the works, plant, or machinery; the negligence of any person in charge of or directing the particular work in which the employé was engaged at the time of the injury or death; and negligence of any person to whose orders the employé was bound to conform, and did conform, and, by reason of his having conformed thereto, the injury or death resulted; the act of any fellow servant, done in obedience to the rules, instructions, or orders given by the employer, or any other person who has authority to direct the doing of said act.

"Sec. 2. The manager, superintendent, foreman, or other person in charge or control of the works, or any part of the works, shall, under this act be held as the agent of the employer, in all suits for damages for death or injury suffered by employés.

"Sec. 3. All acts or parts of acts inconsistent herewith be and the same are hereby repealed."

The mine consisted of a series of coal levels separated by strata of rock, and extended 1,047 feet below the surface of the ground; the level where the plaintiff was working being 500 feet below the sur-

face. All these levels were ventilated by a ventilating fan, which sucked the air out of the mine and so caused a vacuum into which fresh air rushed.

The plaintiff was working in a chamber about 400 feet in length running east and west, and around it a continuous gangway was gradually constructed as the work progressed, to be used by the miners as a working place. In the middle of the west end two doors were placed, opposite to each other, with a space between, so that one would always be shut when the other was open, making an air lock. The air entered this chamber at a point south of these doors, and then went by the south side to the east end, thence north to the north side, and thence back into the main gangway. A miner named Fine and his helper had the mining on the south side of the chamber, and the plaintiff and his helper had the mining on the north side. They made a series of north and south cross-cuts into the coal 60 feet apart, as required by law, working toward each other from the opposite sides. When they met at the center a solid cement and brick or masonry wall was erected, also as required by law. There were six cross-cuts in the chamber, beginning at the west end; the first three had been filled at the center, but the fourth was only closed by a loose board partition. The plaintiff was working at the sixth cross-cut, which was the limit of the property, was some 75 feet from the fifth, and had not been cut through. The fifth cross-cut was properly left open, so that the air coming along the south side to the east end could be turned back and passed through the fifth cross-cut, and thence to the sixth cross-cut. This diverting of the air was accomplished by a tight board partition, called a brattice, between the floor and the roof at the south side, and a similar brattice at the north side.

The negligence charged was that the fourth cross-cut was insufficiently closed, that the distance between the fifth and the sixth cross-cut was too long, that the plaintiff was allowed to go into the chamber with an open lamp, and that the brattice which was intended to direct the air into his working place was not long enough, and was not extended by canvas, as the practice was. It was alleged that in this way most of the air circled around the brattice into the gangway on the north side of the floor, without going as far as his working place, the effect of which was that gas accumulated at the top of the cross-cut, and was exploded by the open miner's lamp in his hat, knocking him down twice, and exploding the blast before the fuse which he had lighted reached the powder, and before he could get away to a place of safety.

October 2, 1913, more than two years after the cause of action arose, the plaintiff was permitted to file an amended complaint, which included additional allegations to the effect that both he and the defendant were engaged in interstate commerce at the time the cause of action arose, which allegations the amended answer denied, and also set up as a defense that the cause of action was barred under the federal statute. At the trial, however, before any proof was made on this point, the defendant conceded that the parties were engaged in interstate commerce. This decided that issue in favor of the plaintiff's allegation. Accordingly, at the close of the case the defendant asked the court to

direct a verdict for it, on the ground that the federal statute was exclusive of all other remedies and that the cause of action was first pleaded when the amended complaint was served, more than two years after it arose, and when it was barred. Union Pacific R. R. Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983. Thereupon the plaintiff moved to strike the allegations as to interstate commerce out of the amended complaint. The court denied this motion, on the ground that it was unnecessary, because the plaintiff could recover, either under the law of master and servant at common law, or under the Pennsylvania Employers' Liability Act, as the evidence permitted; the federal act, by virtue of the limitation of two years, having ceased to apply.

[1-5] We think this was a right conclusion for a wrong reason. The plaintiff had a right to recover otherwise if he could, not because the federal act had ceased to apply, but because it never did apply. When it does apply, it is the supreme law of the land, and supersedes all other remedies. Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Wabash R. R. v. Hayes, 234 U. S. 86, 89, 34 Sup. Ct. 729, 58 L. Ed. 1226. We think it is quite clear that the mere act of mining coal is not interstate commerce, and no concession by the defendant can give the court jurisdiction on that ground. However, if it could, the plaintiff's motion to strike the allegations out should have been granted. Even a stipulation entered into inadvertently in course of a trial will be relieved against if the opposite party is not prejudiced. Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 414, 22 Sup. Ct. 698, 46 L. Ed. 968; Barry v. Mutual Life Insurance Co., 53 N. Y. 536. The amended complaint was evidently intended to enable the plaintiff to recover either under the federal act, or under the Employers' Liability Law of Pennsylvania, or under the law of master and servant at common law, supplemented as to negligence by the Pennsylvania Mining Law, according as the evidence might permit. This was quite proper (Wabash R. R. Co. v. Hayes, 234 U. S. 86, 34 Sup. Ct. 729, 58 L. Ed. 1226), and is the practice in the courts of the state of New York (Payne v. New York, Susquehanna & Western R. R. Co., 201 N. Y. 436, 95 N. E. 19). The trial judge was therefore right in submitting the case to the jury, if a cause of action was developed under either.

[6] The plaintiff was the only witness as to the circumstances immediately preceding the accident, and he testified that he was allowed to go into the chamber with an open lamp; that, having examined for gas with his safety lamp, he discovered none; that he thereupon lighted the squib placed to fire the blast, picked up his hat, in which was an open mining lamp, and started to walk out. As he raised his head he was knocked down by an explosion of gas, got up and was knocked down again, and before he could get away the blast was exploded by the gas. He also testified that he had informed the mining foreman on the morning of the day of the accident that the brattice was not long enough to properly ventilate his working place, and that the foreman promised to have it corrected, which he did not do. The defendant sought to prove that this account of the explosion was impossible, and

that the blast must have gone off through the plaintiff's own negligence. These were questions which we think were properly submitted to the jury. The plaintiff's account does not appear to us so incredible, or the cause of the explosion so disconnected with failure to furnish the ventilation required by the Pennsylvania Mining Law, as to justify the direction of a verdict for the defendant.

The judgment is affirmed.