**UNITED STATES ex rel. HUMPHREY v. JANUS, Superintendent of Ft. Hall Indian Agency, Idaho, et al.**

District Court, D. Idaho, E. D. January 29, 1929.

No. 666.

Roy L. Black and Witty & Anderson, all of Pocatello, Idaho, for plaintiff.

H. E. Ray, U. S. Dist. Atty., and Sam S. Griffin and Wm. H. Langroise, Asst. U. S. Dist. Attys., all of Boise, Idaho, for defendants Janus and Jensen.

C. M. Fox, for defendant Maryland Casualty Co.

CAVANAH, District Judge. On the forenoon of the 13th day of July, 1927, at about 11:30 o'clock, the defendant Jensen, deputy special officer and chief of police of the Ft. Hall Indian Agency, arrested the plaintiff while he was in charge of certain sheep of Eames & Hansen, which were driven upon the Ft. Hall Indian Reservation, and about 5 p. m. of that day incarcerated him in the county jail at Pocatello, Idaho, where he was confined until about 9 p. m. of the following day, without any charge having been made. The defendant Janus is the superintendent of the Indian Agency, and under whose direction the arrest was made. The defendant Maryland Casualty Company is also made a party defendant, upon the theory that it had executed its surety bond for the faithful discharge by the defendant Janus of all the duties of his office.

The case was tried before a jury upon a cause of action for false imprisonment, which resulted in a verdict against the defendants in the sum of $2,500. A petition for a new trial of the defendants is now presented, in which three questions are urged: First, whether the evidence is sufficient to justify the verdict; second, whether any claim plaintiff may have had was settled and compromised; and, third, whether the damages awarded are excessive. While there is further stated in the petition, as error of law, the failure to give certain requested instructions of defendants, they were not on the oral argument urged by the defendants, as it was thought they were covered by the general instructions of the court.

The arrest was made upon the claim that the plaintiff was subject to a penalty of $1 for each head of sheep driven by him for range on the reservation, and which was held at the trial to be a legal one. The case was then submitted to the jury upon the theory that, although the arrest was authorized by law, the question for determination was whether there was unnecessary delay by the officer in detaining plaintiff after placing him under arrest without a warrant, because it seems to be the duty of an officer of the United States, after making an arrest, to take the prisoner, without unnecessary delay, before the nearest United States commissioner, or the nearest judicial officer having jurisdiction under existing laws, for a hearing and taking bail for trial. 18 USCA § 595. And further bail may be granted to the offender for any offense against the United States by any justice, judge, or commissioner of the United States, or by a mayor of the city, justice of the peace, or other magistrate of any state where he may be found. 18 U.S.C.A. § 591. Having these two provisions of the statutes in mind, it seems clearly to be the duty of an officer of the United States, after making an arrest, and especially without a warrant, to take the prisoner, without unnecessary delay, before one of the officers named in the statute and have bail fixed.

The Circuit Court of Appeals for the Ninth Circuit, in the case of Von Arx v. Shafer et al., 241 F. 649, very forcibly lays down the rule as to the duty of an arresting officer. The facts there were that Shafer, the town marshal, arrested, without a warrant, the plaintiff at 1 o'clock in the afternoon, and took him to jail, and without lodging a complaint against him, or taking him before a magistrate, he con-

fined him in jail, where he remained until 10 o'clock the following morning, when he was brought into court and a complaint filed, charging plaintiff with using obscene and profane language, and of which charge he was thereafter acquitted. Plaintiff requested of the arresting officer that he be granted bail, which was refused, and he was required to remain in jail for a period of 21 hours without a warrant, and without any semblance of legal process. About 4 o'clock of the afternoon of the day of the arrest the marshal went to the office of the magistrate Henson to make out a complaint, but failed to find him in his office at the time. On these facts, the court said: "A gross and wanton outrage was committed upon the plaintiff. He was a property owner, and for 12 years had been a resident of the town of Douglas. He was arrested and deprived of his personal liberty, the right to which is most jealously guarded in American jurisprudence, and imprisoned in jail for a period of 21 hours without a warrant, without a semblance of legal process, and upon no charge of violation of law. * * * It was the plain duty of Shafer, upon arresting the plaintiff, to take him forthwith to the magistrate. He had no right to defer this in order to eat his dinner, clean his clothes, or look after witnesses. * * * It is equally clear, upon the facts as they are admitted, that Shafer also is answerable in damages for false imprisonment."

The court then cites with approval a number of citations, which announce the general rule as to the duty of an officer in making an arrest, amongst which is the case of Keefe v. Hart, 213 Mass. 476, 100 N. E. 558, Ann. Cas. 1914A, 716, where the Massachusetts court said: "The defendants had no right to detain the plaintiff to enable them to make a further investigation of the charge against him. It was their duty to bring him before the court as soon as reasonably could be done. * * * It cannot be said as matter of law that their delay for an hour and a quarter was reasonable." And again the court cites with approval: "The duty of the one making such an arrest to bring the prisoner before a proper magistrate or prosecuting officer, that proceedings for the trial of the prisoner may be instituted, and that he may have an opportunity to give bail or otherwise procure his release, is even more imperative than if a warrant had been issued before arrest." 11 R. C. L. 800. Further the court cites with approval the case of Markey v. Griffin, 109 Ill. App. 212, wherein it is said: "The right to release upon bail is so firmly grounded in our system of jurisprudence by federal and state constitutions, and statute and common law, that one accused of crime, whether guilty or innocent, cannot be deprived of the right with impunity. Whether bail shall be granted, or a party deprived of it, is not to be left to the determination of a city marshal or police officer."

Approaching, then, a review of the material facts in the present case, to ascertain whether the arresting officers' conduct was such as to bring them within the protection of the law defining their duties in taking the plaintiff without unnecessary delay before a United States commissioner or other judicial officer, and filing a complaint and granting an opportunity to give bail, we recall that about 11:30 a. m. of July 13, 1927, the defendant Jensen, as deputy special officer and chief of police of the reservation, under the direction of the defendant Janus, placed the plaintiff under arrest for being upon the reservation with sheep, and conveyed him to and placed him in the county jail at Pocatello, a distance from the point of arrest of 30 miles, arriving there at 5 o'clock in the afternoon. Jensen's orders from the defendant Janus were to lock the plaintiff up and then turn the case over to the United States commissioner. At the time of the arrest and at the jail the plaintiff offered to arrange for bail, so that he would not have to stay in jail, and on the following day, through his attorney, also requested several times that he be taken before a commissioner or magistrate and bail be granted. These requests were not granted. When plaintiff was brought to the jail at 5 o'clock in the afternoon of July 13th, Jensen phoned to the office of the United States commissioner at Pocatello, and was informed by the son of the commissioner that his father was then out at his ranch, which was about 15 miles from the city. Jensen then went out to see the commissioner, and found him at the ranch, but he did not take the plaintiff with him. After arriving there he was informed by the commissioner that he had not the necessary blanks on hand, so Jensen returned that evening to Pocatello and requested the commissioner's son to take the blanks out to the commissioner's ranch, which was done by the commissioner's son about 9 o'clock the next morning.

The Indian Agency where Janus and Jensen had their headquarters was about

3½ miles from the commissioner's ranch. Early on the morning of the 14th of July, the attorney for the plaintiff went out to the agency to take the matter up with Janus and Jensen of arranging for bail for the plaintiff, so he could be released from jail, and contending that the plaintiff had not violated any law. A discussion took place between the attorney and Janus as to whether there was any law upon which a charge could be predicated. Jensen did not take the matter up with the commissioner until about noon of that day, when he went to the commissioner's ranch and signed a complaint, in which the charging part was left blank, as the commissioner advised him that he knew of no law under which an offense could be charged. No warrant was then issued. Later in the afternoon the attorney for the plaintiff again demanded of Jensen why plaintiff was not taken before a magistrate to have his bail fixed so he would not have to remain in jail that night, and the defendant replied that he had the warrant, but could not locate the United States deputy marshal to serve it. No such warrant was ever issued. Later in the evening, about 8 o'clock, plaintiff's attorney again called the defendant Jensen on the phone at the jail and further demanded that bail be fixed, to which Jensen replied that the deputy United States marshal was then at St. Anthony, and he did not know what he could do. About 9 o'clock that evening Jensen released the plaintiff from jail. It further appears from the plaintiff's testimony, which was uncontradicted by Jensen, that when Jensen placed him under arrest plaintiff informed him that he had money to cover the matter, and asked what the penalty was, to which Jensen replied: "If we had the mind to push it, it would be the big house for me, but that wasn't what we wanted; they would hold the company, hold us, as well as they held our sheep, to pay the damages and turn us loose." There was further testimony given by Sheriff Jensen that Janus told him that he was going to put those fellows in jail and hold them there to teach them a lesson.

It will be remembered that the law, in authorizing an arrest without a warrant, does so only as a preliminary step toward taking a prisoner before a court or officer authorized to entertain the charge and grant bail without unnecessary delay, and not to place the prisoner in jail and deprive him of his personal liberty for a longer period of time than is reasonably necessary under the circumstances of the case. The inquiry, therefore, here is: Were defendants, as such officers, justified in confining the plaintiff in jail for 29 hours without taking him before the commissioner or some other officer authorized by the statute to grant bail under the evidence submitted to the jury? I do not think so, for it is clear from the testimony that, when the defendant Jensen brought the plaintiff to Pocatello at 5 o'clock in the afternoon, he could have, before placing him in jail, taken him either before the commissioner with him, when he went to where the commissioner was, or before one of the justices of the peace there in the city, as he testified that he knew two justices of the peace were in the city. This he refused to do, after the plaintiff asked to allow him to give bail.

The mere fact that he went to the commissioner in his automobile, which only took a short time, and a complaint was then not filed, would not excuse him for not taking plaintiff before the commissioner, or before one of the other officers authorized by the statute to fix bail, and especially would this be true where he declined again, and again on the following day, after being requested by counsel for the plaintiff, to take him before the commissioner or magistrate for bail. What fair or legal excuse can be advanced for continuing the detention of the plaintiff in jail until 9 o'clock that evening, after the commissioner about noon of that day had informed the defendant that there was no law upon which to base a charge, and refused to issue a warrant upon the blank complaint filed? It certainly cannot be that the two justices of the peace or the commissioner were not accessible before whom he could have taken the plaintiff for bail, because we find that the officer knew there were two justices of the peace in Pocatello, and after placing plaintiff in jail went in his automobile to where the commissioner was, and on the next day was before the commissioner at noon, when he was informed that there was no provision of law under which a charge could be made.

There is no conflict in the testimony as to the circumstances under which the plaintiff was held, or as to the length of time. The delay in taking him before the commissioner or magistrate for bail, or filing a complaint, was unreasonable and unfair to him, and the actions and conduct of the defendant officers were arbitrary and in disregard of his rights, and for such con-

duct they became answerable to him in damages for false imprisonment.

With respect to the contention that the claim of plaintiff for damages for false imprisonment was settled and compromised, there does not seem to be much conflict in the evidence as to just what was done and understood by the parties at the time the owner of the sheep delivered the check for $500 to the defendant Jensen to cover the penalty assessed by the officer for the trespass of the sheep. This transaction took place between the witness Black and Eames and the defendant Jensen on the afternoon of the 14th, and there was no agreement reached between them that the payment of the $500 penalty demanded by the officer as damages for the trespass of the sheep was also to be a settlement or compromise of plaintiff's rights and claim for damages for being confined in prison. In fact, the conduct of the officer thereafter, and the insistence of plaintiff's attorney that plaintiff be taken before a magistrate or commissioner for bail, and released, conclusively shows that at the time the check of $500 was given there was nothing in the minds of the parties as to it also settling the claim of plaintiff. There was no connection between the two. It was a settlement of the penalty for the trespass of the sheep by the owner, as he was desirous of having the sheep immediately released from the possession of the officers.

While it is asserted in the petition for new trial that the bond of the defendant Maryland Casualty Company does not, under its terms, include liability under the facts in this case, yet that question was not urged upon the oral argument; but as the bond, which is in evidence, obligates the company as surety for the faithful discharge and fulfilling of the duties of the office held by the defendant Janus, there can be no question under the record but that the defendant company became liable in damages for the acts and conduct of the defendant Janus.

The further contention is made by the defendants that the amount of the verdict is excessive, as it was given under the influence of passion or prejudice. It is now the recognized rule that the court should reduce the verdict, if the amount is such as to suggest passion or prejudice upon the part of the jury. The nature of the evidence in the case, showing the indifference on the part of the defendant officers in not giving the plaintiff an opportunity to give bail, and their remarks concerning the arrest, convinces me that the amount of the verdict is so disproportionate to the injuries sustained as to indicate that the jury was influenced by passion and prejudice, and therefore I think that a recovery of $1,900 is the extreme amount warranted by the most favorable view of the evidence.

If within 20 days plaintiff shall file a remission of all above $1,900, the judgment will stand for that amount; otherwise, the judgment will be set aside, and a new trial granted. In either event the plaintiff will recover his costs.