## CHILDS et al. v. RADZEVICH.
### No. 8455.

United States Court of Appeals
District of Columbia.

Argued Nov. 4, 1943.
Decided Dec. 6, 1943.

Mr. Emmett Leo Sheehan, of Washington, D. C., with whom Mr. Richard W. Galiher, of Washington, D. C., was on the brief, for appellants.

Mr. J. Wilmer Latimer, of Washington, D. C., with whom Messrs. Walter C. Clephane and Gilbert L. Hall, both of Washington, D. C., appeared on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and ARNOLD, Associate Justices.

GRONER, C. J.

This is an action begun by appellants in the District Court to recover damages for personal injuries sustained while riding as guest passengers in appellee's automobile. The accident happened on Virginia State Route 644, some eight or ten miles from Alexandria. The trial judge, on plaintiffs' evidence, directed a verdict for defendant. The appeal followed.

What is popularly known as the guest-automobile statute is in effect in Virginia. It provides that no person transported as a guest by the owner of a motor vehicle shall be entitled to recover damages for injuries resulting from its operation, "unless such death or injury was caused or resulted from the gross negligence or willful and.

wanton disregard of the safety of the person * * * being so transported on the part of such owner * * *." [1]

The undisputed evidence shows that the three appellants were riding as guest passengers in appellee's automobile, and were injured when the automobile went out of control and ran with great force into a telegraph pole on the side of the road. The car was being driven by appellee on State Road 644, and he and his guests had only a little while before concluded a visit at the home of appellee's relative. The time was about ten o'clock in the evening. It was raining and very dark. As the automobile approached the intersection of Route 644 with Route 617, where there is a slight curve, the driver accelerated his speed to approximately fifty miles an hour, failed to heed a "Stop" sign protecting the intersection, and drove at the same high speed from the dirt-gravel road on which he had been travelling onto the macadamized portion of the road which begins at the intersection, and which was slippery as a result of the rainfall. As the automobile reached the paved section of the road it went out of control, skidding from one side to the other for a distance of more than three hundred feet, where it struck a telegraph pole some twelve to fourteen inches in diameter, broke it off and careened to the opposite side of the road where it stopped.

■ The single question in the case is whether, in the proper consideration of this evidence and the reasonable inferences to be drawn from it, enough was shown which, if credited by the jury, would in law justify a verdict under the provisions of the Virginia statute. The question is close, but we think there can be no doubt that driving an automobile fifty miles an hour in the rain on a very dark night, across a slightly curving intersection, from a dirt road to a paved one, in disregard of a "Stop" sign, is negligence. But under the Virginia statute that in itself is not sufficient to justify a verdict for plaintiffs; it must go farther and reach the degree of "gross." Here, if that test be applied to the spoken evidence of the witnesses, it may well be doubted whether it sufficiently measured up, for none of the occupants of the car testified that the owner-driver did any other act than increase his speed to cross the intersection. The night was dark and they could only guess the extent of acceleration. But in this class of cases, as we have found, it sometimes happens that the physical facts shown speak more effectively than the words of witnesses. Here it is admitted that though the car got out of control at the entrance to the intersection, it was then travelling at such speed that three hundred or more feet further its momentum was sufficient to cause it to cut down a twelve to fourteen inch pole, without stopping its progress. Viewed in this light, we are unable to say that fair-minded men might not differ in determining from all the evidence whether the negligence was ordinary or gross. Accordingly, we are of opinion that the question was primarily for the jury and not for the court. In saying this we are mindful of the difficulty of so defining the term "gross negligence" as to furnish the jury a safe guide whereby to reach a right conclusion, —but this the Virginia Court of Appeals has essayed to do time and again as the question arose, before and since the passage of the act. In one of the latest cases, the court quotes with approval the definition of Justice Rugg, in a Massachusetts case, where he said that gross negligence "is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence." [2] But on the same day, in another case involving the same problem, the court said: [3] "A mere failure to skillfully operate an automobile under all conditions, or to be alert and observant, and to act intelligently and operate an automobile at a low rate of speed may, or may not, be a failure to do what an ordinarily prudent person would have done under the circumstances, and thus amount to lack of ordinary care; but such lack of attention and diligence, or mere inadvertence, does not amount to wanton or reckless conduct or constitute culpable negligence for which defendant would be responsible to an invited guest."

■ In still another case the Virginia court said that gross negligence is "that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another." [4]

1 Virginia Code (Act of March 28, 1938), Sec. 2154 (232).

2 Thornhill v. Thornhill, 172 Va. 553, 2 S.E.2d 318, 322.

3 Lennon v. Smith, 173 Va. 322, 327, 2 S. E.2d 340, 343.

4 Wright v. Osborne, 175 Va. 442, 9 S.E. 2d 452, 454.

And again, it "is a very great negligence, or the absence of slight diligence, or the want of even scant care." [5] Undoubtedly, there is a margin of difference in the respective specifications in these different definitions, but when considered in relation to their particular facts, we think it may fairly be said that the Virginia statute requires that to hold the owner in damages there should be a showing that the injury was caused by the heedless disregard of the rights or safety of others by the driver of the car. As we said, the ascertainment of this, in the facts of this case, was for the jury and not the court. The reason of this is that, at the conclusion of the whole case, there is always the opportunity to set aside the verdict when, in the trial court's opinion, it is contrary to the decided or overwhelming weight of the evidence, whereas on a motion to direct a verdict, the evidence considered most favorable to the party against whom the motion is made must be so insufficient in fact as to be insufficient in law. This adds up to no more than a recognition of the fact that there are cases in which a verdict should be set aside as against the weight of evidence, but in which the court would not be justified in granting, in the first instance, a motion for a directed verdict. [6] The judgment appealed from is reversed and the case remanded for a new trial.

Reversed.

ARNOLD, Associate Justice.

I concur but I do not think that the majority opinion sufficiently brings out the capricious and arbitrary character of the ruling of the court below directing a verdict for the defendant. Defendant was driving forty miles an hour at night, and in the rain. He put on additional speed in crossing another highway in disregard of a stop sign. In the absence of some contradictory testimony or some excuse, such conduct constitutes gross negligence. I cannot agree with the majority opinion in so far as it intimates that any other conclusion is possible on the evidence before us.

---

[5] Thomas v. Snow, 162 Va. 654, 174 S.E. 837, 839.

[6] Mt. Adams, etc., R. Co. v. Lowery, 6 Cir., 74 F. 463.