## RICE v. UNION PACIFIC R. CO.
### Civ. No. 103–47.

United States District Court
D. Nebraska, Omaha Division.
Jan. 19, 1949.

Everett C. Pilcher and Robert W. Haney, both of Omaha, Neb., for plaintiff.

T. F. Hamer, George C. Holdrege and R. B. Hamer, all of Omaha, Neb., for defendant.

DELEHANT, District Judge.

On October 8, 1948, after trial of the issues in this cause, the jury returned a general verdict for the plaintiff in the sum of $11,000.00 and also made answers, entirely consistent with the general verdict, to three special interrogatories submitted at the defendant's request; and the court, in accordance with Rule 49(b) Federal Rules of Civil Procedure, 28 U.S.C.A., directed the entry of judgment accordingly. Within the time allowed therefor, the defendant served and filed its motion to set aside the answers to the interrogatories and for a new trial. The motion has been submitted upon oral argument and briefs of counsel for the respective parties.

Two of the grounds assigned in the motion may be considered very briefly.

One is prejudicial misconduct of counsel for the plaintiff occurring in the closing argument in her behalf. Putting aside any question of the adequacy and timeliness of the notation of exception to such argument, the court is satisfied that the language, pointed out by counsel in the course of oral argument upon the motion, falls far short of misconduct of counsel.

█ Then, it is contended that the general verdict and special answers of the jury are contrary to the weight of the evidence.

Reserving for individual consideration the amount of the verdict, the court can not grant that position. It is quite true that there was considerable evidence before the jury upon which it could have arrived at a verdict, and made answers, directly at variance with its actual findings. But evidence in substantial, and not minuscule, measure was also before it whose clear and positive tendency was to support both the general verdict and the special findings. And, after careful consideration of the entire record, the court is persuaded not only that there was adequate evidence to require the submission of the case to the jury, but, more significantly, that there was a manifest and sharp dispute in the conflicting substantial evidence for the respective parties upon which the jury's verdict should be accorded controlling effect. In other words, a verdict in behalf of either party would have been supported by adequate sustaining evidence, and invulnerable to the charge that it was contrary to the weight of the evidence. In that situation, the verdict and findings of the jury should not be disturbed.

██ It is true, as counsel for the defendant have argued, that a trial judge confronted with a motion for a new trial on the ground that the verdict is contrary to the weight of the evidence, may not properly deny the motion solely because, upon the trial, there was sufficient evidence in support of the position of the prevailing party to require the submission of the issues to the jury. The true rule has been clearly stated by Chief Judge Parker in Garrison v. United States, 4 Cir., 62 F.2d 41, 42; and repeated by him in Roedegir v. Phillips, 4 Cir., 85 F.2d 995, and Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, as follows:

"Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to

the clear weight of the evidence, or is based upon evidence which is false; for, even though the evidence be sufficient to preclude the direction of a verdict, it is still his duty to exercise his power over the proceedings before him to prevent a miscarriage of justice. See Felton v. Spiro, 6 Cir., 78 F. 576. Verdict can be directed only where there is no substantial evidence to support recovery by the party against whom it is directed or where the evidence is all against him or so overwhelmingly so as to leave no room to doubt what the fact is. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. Verdict may be set aside and new trial granted, when the verdict is contrary to the clear weight of the evidence, or whenever in the exercise of a sound discretion the trial judge thinks this action necessary to prevent a miscarriage of justice."

See also Hawkins v. Sims, 4 Cir., 137 F.2d 66; Mt. Adams, etc., Ry. Co. v. Lowery, 5 Cir., 74 F. 463; Bain v. United States, 6 Cir., 262 F. 664; General American Life Ins. Co. v. Central Nat. Bank 6 Cir., 136 F.2d 821; Applebaum v. United States, 7 Cir., 274 F. 43; Adams v. United States, 7 Cir., 116 F.2d 199; Childs v. Radzevich, 78 U.S.App.D.C. 235, 139 F.2d 374; Pruitt v. Hardware Dealers Mut. Fire Ins. Co., 5 Cir., 112 F.2d 140; Daffinrud v. United States, 7 Cir., 145 F.2d 724. Moreover, the trial judge in ruling upon a motion for a new trial on the ground that a verdict is contrary to the weight of the evidence, is called upon to exercise a substantial measure of discretion. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147; United States v. Socony-Vacuum Oil Co., 510 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129; Paine v. St. Paul Union Stockyards Co., 8 Cir., 28 F.2d 463; Ætna Casualty & Surety Co. v. Reliable Auto Tire Co., 8 Cir., 58 F.2d 100; Simmonds v. Capital Transit Co., 79 U.S.App.D.C. 371, 147 F.2d 570; Ecker v. Potts, 72 U.S.App.D.C. 174, 112 F.2d 581; General American Life Ins. Co. v. Central National Bank, supra; Youdan v. Majestic Hotel Management Corporation, 7 Cir., 125 F.2d 15; Daffinrud v. United States, supra; Dvess v. W. W. Clyde & Co., 10 Cir., 132 F.2d 972; Ætna Casualty & Surety Co. v. Yeatts, supra; Francis v. Southern Pac. Co., 10 Cir., 162 F.2d 813; General Accident Fire & Life Assurance Corporation v. Dickinson, D.C.Cal., 61 F. Supp. 153. That discretion is not arbitrary, but is a mature judicial discretion which it is his duty to administer rather than to refuse to exercise. Paine v. St. Paul Union Stockyards Co., supra.

The court has respected the admonition of the foregoing rules and authorities during its consideration of the present motion in all of its several aspects; and that observation has equal application to the points already adverted to and to the discussion which is now offered.

It is finally and earnestly argued that the verdict is excessive, and, together with the special answers, is the result of passion and prejudice. The court has considered this assignment in both of its phases, first, in the manner in which it is presented, as a ground for an unconditional order vacating the verdict and awarding a new trial, and secondly, as a reason for an order granting a new trial unless a determined excess in the amount of the recovery is remitted by the plaintiff. The presentation of a motion for a new trial in comparable situations ordinarily invites an examination of both of those alternatives, for the requirement of a remittitur is essentially the imposition of a condition upon the allowance of the motion.

No feature or incident of the trial is, or could be, cited as an impulse to the intrusion of passion or prejudice into the deliberations of the jury. Such factors may not be found in the present case, unless they are to be deduced from the amount of the verdict itself. Therefore, the more significant of the plaintiff's injuries should be recalled and considered in relation to the verdict.

Those injuries are attributable to a grade crossing collision, in the early morning of July 21, 1947, within the city of Omaha, between a switching box car of the defendant and an automobile owned and being driven by a young man, now her husband, in which the plaintiff, then unmarried, was riding as a passenger. They reasonably required the immediate hospitalization of

the plaintiff, which continued for some fourteen days, and her medical and surgical treatment regularly and frequently during that period, and occasionally thereafter.

No fractures or bone dislocations resulted from the collision. The plaintiff sustained a traumatic shock from which she suffered during the earlier portion of her hospital treatment, and a cerebral concussion. As a result, principally of those factors, she was semi-conscious during the period of from forty-eight to seventy-two hours after the impact and was restless and nervous then and for some not exactly determinable time thereafter. Her face was lacerated and bruised, and punctured in several places by glass spiculæ. The facial lacerations included several minor wounds, and two large ones. Of the latter, one extended in a somewhat irregular course downward and to the right from about one and one-half inches above the extreme inner margin of her right eye across the center of the eye lid, (but without invasion of the eye tissue or any observable cutting of the thin covering lid itself), and from the outer margin of the eye some three inches outward and down the cheek; and the other proceeded from a point about three inches below, and slightly forward from, the right ear, towards the front and downward along the outer margin of the jaw, and thence upward and towards the left into the lower lip slightly to the right of its median line. Both of those wounds were deep, and the one first described, though probably resulting from contact with a single object, was not strictly continuous and might be regarded as two distinct cuts. Her right wrist was deeply lacerated, with the exposure, but no severance of tendons, and her right leg was cut. She also received abrasions of both her knees and many bruises about her head, thighs and legs and over her body generally.

In her treatment, a surgeon promptly spent some two and one-half hours in the cleansing of her abraded and contused members and the treatment of her minor cuts, but chiefly in the surgical approximation and suturing of the deeper wounds, especially in her face. He also administered and prescribed appropriate treatment for shock and concussion and, in modest but adequate quantities, sedatives and medicines. Later, he removed certain of the sutures, and, from time to time over a considerable period, gave other attention to the case and assisted in the removal of certain of the glass spiculæ which could not initially be located and eliminated, but subsequently by natural prompting, moved to the surface of the patient's skin.

The plaintiff, who was employed at the time of her injury, was unable to, and did not, return to duty for some thirteen weeks. Thereafter, she worked regularly, as the evidence disclosed, first at her original employment and later at another job, until one week before her marriage. She underwent pain for a considerable period after the collision, which was minimized by her initial semi-comatose condition and later by sedatives. And in her testimony she complained of a still persisting ache in the side of her head, which her physician as a witness appraised as a possible numbness of uncertain duration.

She also testified that she continued to be conscious of, and sensitive about, her residual scars, particularly those on her face, and the staring at her of others; in consequence of which she had restricted her social contacts and experienced embarrassment while she worked. And she indicated that, as a result of the scar in the region of her right eye, the lid of that member did not close equally with that of the left eye, but made the right eye seem slightly larger than the left; upon which subject the physician stated that "it is possible that she (may) get a little deviation from the normal closure". The observable disparity, if any exists, is very slight. She was—and is—obviously a young woman of pleasing appearance. Early in life she encountered a crippling Polio-myelitic illness, which noticeably impaired the functioning of her left leg and caused her to limp. But the collision here involved is not said to have aggravated that condition. That her major facial cuts have resulted in perceptible and permanent scars is unquestioned. However, her restoration in that behalf has been quite remarkable. Among the exhibits is a photograph of her taken early in September, 1947, some eight weeks after the collision, and about thirteen months before

the trial, in which the right side of her face in its then condition is clearly shown. While that photograph marks the locations of the scars that remained at the time of the trial, the plaintiff's face itself when she appeared as a witness before the court and jury revealed an excellent clearing and healing of the early disfigurement. The scars are there but by no means with the depth or discoloration suggested by the photograph.

The jury was allowed by the court's charge to award the plaintiff recovery, among other items, "for the loss of earnings, if any, which, in consequence of the collision, she has actually sustained up to this date; and, in addition thereto, for the sum or sums of money necessarily incurred or paid by the plaintiff for hospital and medical and surgical services" not exceeding the fair and reasonable charges therefor. Such items in the aggregate amounted to slightly less than one thousand dollars.

Therefore, the jury allowed her approximately ten thousand dollars for the other elements for which the charge permitted recovery. Those were included within the definition of, "such an amount as will fairly and reasonably, but not excessively, compensate her for * * * mental and physical pain and suffering, if any, which, in consequence of the collision she has already sustained and with reasonable certainty will sustain in the future" and for her disfigurement. No recovery was allowed under the charge for loss of future earnings or impairment of earning capacity, since the evidence was inadequate to warrant the jury's consideration of such an item.

▆ In aid of the court's consideration of the attack upon the amount of the verdict, counsel for the respective parties have recalled and discussed many reported opinions in which attention has been given to that subject in a great variety of settings. Those cases, along with others, have been examined by the court, and many of them are broadly instructive. But, upon this question arising in a concrete case, it is neither intended nor possible that any published opinion, or all of them that are pertinent, should be decisively controlling, or more than suggestive. Here especially,

each case has to stand upon its own facts. And the trial judge must determine the propriety or excessiveness—or, in certain instances, the inadequacy—of the verdict in the exercise of sound judicial discretion with regard principally to the injuries in the case before him whose compensation was the jury's problem. And, because such compensation is primarily—and, except for his duty to avert manifest injustice, exclusively—the function of the jury, he should only rarely and reluctantly disturb the jury's finding.

With that thought, the court has re-examined the entire record before it and has considered that record and the appearance, actions, and bearing of the plaintiff in her participation in the trial. That consideration has extended to the full range of the plaintiff's injuries and complaints, minor as well as substantial, of which no more than an outline of the more serious elements has been set down or attempted in this memorandum.

▆ From that study the court has concluded that the verdict is excessive; that the maximum award (in addition to the approximately $1,000.00 attributable to established expenses) which should be sustained is $6,000.00; and that the total allowable recovery should not exceed $7,000.00. In reaching that result no diminution of her damages is made on the basis of comparative negligence. Furthermore, it is arrived at with due recognition of the relation, at the time of the injury and now, between money and the prices of the things it buys. And the court unhesitatingly adheres to the view that that relation, in other words, the current value and purchasing power of money, should be regarded in the assessment of damages for such items as pain and suffering and disfigurement, as well as for the impairment of earning capacity. If the value of money were now more nearly at a point which, for want of more precise definition, may be termed normal, the allowable recovery would be fixed at a somewhat lower figure.

However, the excess in the verdict is neither shocking to the court's conscience nor so far disproportionate to the plaintiff's injuries as to establish, or even to suggest,

the ministry in any measure at all, of passion or prejudice in the jury's deliberations. And, as has already been observed, no other circumstance in the case requires or warrants that nullifying inference.

The court, therefore, must deny the defendant's motion for the entry of an order unconditionally granting a new trial.

■ On the other hand, the verdict and judgment should not be allowed to stand, in the face of the determination that they are clearly excessive. In such situations the trial court in the federal judicial system is not powerless. It may deny the motion for a new trial upon condition that the successful party remit and release the portion of the verdict and judgment found to be in excess of the highest appropriate recovery, and in default of such remission and release, grant a new trial.

Such a course has long had the sanction of the Supreme Court. In 1885, in Northern Pacific Railroad Co. v. Herbert 116 U.S. 642, 6 S.Ct. 590, 592, 29 L.Ed. 755, Mr. Justice Field used this language:

"The exaction, as a condition of refusing a new trial, that the plaintiff should remit a portion of the amount awarded by the verdict was a matter within the discretion of the court. It held that the amount found was excessive, but that no error had been committed on the trial. In requiring the remission of what was deemed excessive it did nothing more than require the relinquishment of so much of the damages as, in its opinion, the jury had improperly awarded. The corrected verdict could, therefore, be properly allowed to stand." Citing New York and Massachusetts state court cases and the opinion of Mr. Justice Story, as Circuit Justice in Blunt v. Little, C.C.Mass. 1822, 3 Fed.Cas. page 760, No. 1,578. Arkansas Valley Land Cattle Co. v. Mann, 130 U.S. 69, 9 S.Ct. 458, 32 L.Ed. 854; Clark v. Sidway, 142 U.S. 682, 12 S.Ct. 327, 35 L.Ed. 1157; Kennon v. Gilmer, 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110.

In 1934, in Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150, Mr. Justice Sutherland, speaking for a majority of the court, made a scholarly analysis of the English and American federal judicial precedents involving the requirement of a remittitur by the prevailing party as a condition to the denial of a motion for a new trial. In the case then before the court the trial judge had granted a new trial on the ground of the inadequacy of the verdict, unless the losing party would consent to an increase of the damages in a specified amount. The losing party had consented; but the prevailing party, neither consenting nor being required to consent, had appealed to the Circuit Court of Appeals, 1 Cir., 70 F.2d 558, which reversed the trial court's judgment. The Supreme Court, four justices dissenting, affirmed the ruling of the Circuit Court of Appeals; and, in effect, held that the recognized practice of requiring the remittitur of the determined excess in verdicts should not be extended to include or justify an order of a trial judge requiring the enlargement of a verdict, considered to be inadequate as a condition to the acceptance, otherwise, of the verdict. Upon the point, the majority opinion thus summarizes its thought [293 U.S. 474, 55 S.Ct. 301]:

"The controlling distinction between the power of the court and that of the jury is that the former is the power to determine the law and the latter to determine the facts. In dealing with questions like the one now under consideration, that distinction must be borne steadily in mind. Where the verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand; but, in that event, both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages. Both are questions of fact. Where the verdict is excessive, the practice of substituting a remission of the excess for a new trial is not without plausible support in the view that what remains is included in the verdict along with the unlawful excess—in that sense that it has been found by the jury—and that the remittitur has the effect of merely lopping off an excrescence. But, where the verdict is too small, an increase by the court is a bald

addition of something which in no sense can be said to be included in the verdict."

Interestingly, the four dissenting justices, Stone, Brandeis, Cardozo and Hughes, C. J., joined with the majority of the court in recognizing the power to condition the denial of a new trial on a remittitur but insisted that, logically, that power should be held to include also the power to condition such denial on the consent of the loser to a larger assessment.

The power, and, in appropriate circumstances, the duty, of a trial court to condition the overruling of a motion for a new trial upon the filing of a release of the portion of a verdict found to be excessive has consistently been affirmed and administered by the lower federal courts since the ruling by Mr. Justice Story in Blunt v. Little, supra. Mutual Benefit Health & Accident Ass'n v. Thomas, 8 Cir., 123 F.2d 353, in which the propriety of the suggested procedure was recognized, though its application was not there made or required; Fidelity Storage Co. v. Kingsbury, 65 App.D.C. 69, 79 F.2d 705; Becker Bros. v. United States, 2 Cir., 7 F.2d 3; Burris v. American Chicle Co., 2 Cir., 120 F.2d 218, affirming D.C., 33 F.Supp. 104; Herring v. Luckenbach S. S. Co., 2 Cir., 137 F.2d 598; Southern Railway Co. v. Miller, 4 Cir., 267 F. 376, certiorari denied 254 U.S. 646, 41 S.Ct. 15, 65 L.Ed. 455; Brabham v. State of Mississippi, 5 Cir., 96 F.2d 210, certiorari denied 305 U.S. 636, 59 S.Ct. 103, 83 L.Ed. 409; Detroit, T. & I. R. Co. v. Hahn, 6 Cir., 47 F.2d 59, certiorari denied 283 U.S. 842, 51 S.Ct. 489, 75 L.Ed. 1452; Massee v. Williams, 6 Cir., 207 F. 222; Whitman Const. Co. v. Remer, 10 Cir., 105 F.2d 371; Duke v. St. Louis & S. F. R. Co., C.C.Ark., 172 F. 684; United States ex rel. Humphrey v. Janus, D.C.Idaho, 30 F.2d 530, reversed on other grounds, 9 Cir., 38 F.2d 431; Stafford v. Pawtucket Haircloth Co., C.C. R.I., 22 Fed.Cas. page 1030, No. 13,275; Darnell v. Krouse, C.C.Pa., 134 F. 509; Bierbach v. Goodyear Rubber Co., C.C. Wis., 15 F. 490; Yurkonis v. Delaware, L. & W. R. Co., D.C.N.Y., 213 F. 537, affirmed without reference to the instant point, 2 Cir., 220 F. 429, and Review by Supreme Court denied; Palmer v. Moren, D.C.Pa., 44 F.Supp. 704.

This court, has, therefore, no doubt of its authority, and, on occasion, its appropriate duty to require a remittitur of the excessive portion of a jury's verdict as a condition to the denial of a new trial.

██ Two final observations may properly be made. The power of this court in the particular under examination is in no wise dependent upon the practice in the courts of the state in which the federal court functions or of any other state. It is entirely a problem of federal court procedure. Aetna Casualty and Surety Co. v. Yeatts, supra. Finally, by its express terms, Rule 59(a) (1) Federal Rules of Civil Procedure clothes the court with authority to grant a new trial "in an action in which there has been a trial by jury, *for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States"*. (Emphasis added.) It, therefore, does not alter or impair, but rather reaffirms, the applicability on this occasion of federal decisions on the point announced before the effective date of the rules. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Pruitt v. Hardware Dealers Mut. Fire Ins. Co., 5 Cir., 112 F.2d 140.

Having determined that the verdict, though not the result of passion or prejudice, controlling or influencing the jury's deliberation and not shocking to the court's conscience, is, nevertheless, excessive to the extent of $4,000.00, the court is entering an order (a) that, if and upon condition that, on or before February 1, 1949, the plaintiff, either personally or by one or both of her attorneys of record, shall serve upon opposing counsel and file in this case a remittitur of the sum of $4,000.00 upon the verdict found and returned herein and a release, to that extent only, of the judgment entered upon the verdict, the motion for a new trial be denied and overruled and the judgment be confirmed in and for the remaining sum of $7,000.00 with interest from October 8, 1948 and costs of suit; but (b) that if such remittitur and release be not so served and filed on or

before February 1, 1949, the motion for a new trial be sustained, the judgment entered upon the verdict be vacated and canceled, the verdict be set aside, and a new trial be granted in the case. The remittitur in respect of the verdict and partial release of the judgment, if employed in the plaintiff's behalf, may, at the plaintiff's option, be couched in a single instrument or in two instruments, *but, however prepared in the matter of form, will be both served upon counsel and filed.*